IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **SIOUX STEEL COMPANY,** | ) |
| Plaintiff, | ) |
| v. | ) No. 16 C 2212 |
| **PRAIRIE LAND MILLWRIGHT SERVICES, INC.,** an Illinois corp., | ) Judge Mary M. Rowland<br>) Magistrate Judge Finnegan |
| and | ) |
| **DUANE CHAON,** | ) |
| Defendants. | ) |

### ORDER

Plaintiff Sioux Steel Company ("Sioux Steel") filed suit in February 2016 alleging that several of the products manufactured by Defendant Prairie Land Millwright Services, Inc. ("Prairie Land") infringe Sioux Steel's patent. The case was stayed in December 2016 pending the outcome of Sioux Steel's petition for *inter partes* review ("IPR") by the Patent Trial and Appeal Board ("PTAB"). On April 4, 2018, the PTAB issued its Final Written Decision rejecting Prairie Land's challenges to Sioux Steel's patent. This case resumed and Sioux Steel filed an amended complaint adding Duane Chaon, the owner and President of Prairie Land, as a defendant. Defendants, in turn, have asserted a counterclaim against Sioux Steel for declaratory judgment of invalidity, unenforceability, and non-infringement of Sioux Steel's patent.

Currently before the Court is Sioux Steel's motion to compel compliance with third-party subpoenas served on Harvest Engineering LLC ("Harvest") and its owner Bruce Meyer. For reasons set forth here, the motion is granted in part and denied in part.

**BACKGROUND**

The origins of this lawsuit date back to the fall of 2011, when Sioux Steel and Prairie Land filed separate applications to patent bin paddle sweep products. "Commonly used in a grain silo, a bin paddle sweep moves material in a storage bin from one place to another; it may be compared to a massive broom." (Doc. 134, Order, at 2). Sioux Steel filed its patent application on September 9, 2011. Prairie Land filed its patent application the following month on October 19, 2011, and claims it was unaware of Sioux Steel's earlier application. In 2012, Prairie Land retained Harvest Engineering and its owner Bruce Meyer to assist with the development of Prairie Land's bin paddle sweep products. According to Meyer, his "primary involvement in the development of the Prairie Land bin sweeps involved the electrical controls and various electronic components controlling the operation of the sweeps." (Doc. 191, Meyer Decl., ¶ 4).

On July 8, 2014, the U.S. Patent and Trademark Office (the "PTO") issued Patent 8,770,388 directed to Prairie Land's bin sweeps. Several months later, on March 3, 2015, the PTO issued Patent 8,967,937 directed to Sioux Steel's bin sweeps. Though Prairie Land's patent issued first, there is no dispute that Sioux Steel's patent has priority and is the patent at issue in this case because Sioux Steel filed its application first.

A. **Notice of Infringement**

Sioux Steel notified Prairie Land of its patent infringement allegations on February 12, 2016 by emailing a copy of its Complaint in this case to Prairie Land's counsel, Craig Fieschko. Prairie Land claims that at least as of February 18, 2016, Fieschko was in communication with Bruce Meyer regarding possible defenses to the lawsuit. More specifically, Fieschko directed both Meyer and Prairie Land's owner Duane Chaon to

begin reviewing patents to discover prior art which might serve to invalidate Sioux Steel's patent. It is undisputed that Meyer is serving as Prairie Land's expert in this case, though his exact retention date is not clear. (*See, e.g.,* Doc. 124-1, Meyer's 9/21/2016 Expert Declaration for *Inter Partes* Review).

### B. The Subpoenas

On or about July 17, 2019, Sioux Steel issued subpoenas to Meyer and Harvest seeking documents and other discoverable information. (Docs. 182-2, 182-3). Prairie Land's counsel do not represent Meyer or Harvest, but they accepted service and determined which documents were responsive and which were protected from production by either the attorney-client privilege or the work product doctrine. Prairie Land explains that this process was necessitated by the fact that the subpoenas seek "documents including communications between Prairie Land's attorneys and Meyer, as well as between the Defendants themselves." (Doc. 190, at 2). Following counsel's review, Prairie Land produced several thousand responsive documents to Sioux Steel on behalf of Meyer and Harvest, along with a privilege log identifying several categories of documents being withheld on privilege grounds. (Doc. 182-7; Doc. 190, at 4-5).

Sioux Steel objects that Meyer and Harvest, through Prairie Land, have improperly withheld some documents that are not in fact privileged, and have produced an inadequate privilege log that omits basic information needed to determine whether the privileges apply, such as dates, authors, recipients, and subject matter. Meyer, Harvest, and Prairie Land stand by the production and the privilege log.[1] As discussed below, the

---

[1] Though Sioux Steel's motion seeks to compel information from Meyer and Harvest, Prairie Land has opposed the motion, provided the arguments in opposition to the motion, and prepared the privilege log at issue. Sioux Steel suggests it was improper for Prairie Land's attorney to conduct the document review, but it does not deny that Prairie Land and Chaon have standing to

3

Court agrees that the privilege log requires supplementation in several respects but denies all other aspects of the motion.

## DISCUSSION

**A.     Privilege Standards**

Under Rule 45, a third-party that withholds subpoenaed information under a claim of privilege must "(i) expressly make the claim; and (2) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." FED. R. CIV. P. 45(e)(2)(A).  Prairie Land has asserted claims of attorney-client privilege and work product protection over 83 separate documents.  "The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010).  The purpose of the privilege is to "'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Shaffer v. American Med. Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011) (quoting *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981)).  The party claiming the attorney-client privilege bears the burden of proving it applies.  *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 176, 180 (N.D. Ill. 2018).

Rule 26(b)(3)(A), which codifies the work product doctrine, provides that "a party may not discover documents and tangible things that are prepared in anticipation of

---

assert privilege objections.  Moreover, the process has no bearing on the questions at issue in the motion, namely, whether the privilege log is sufficient, and whether the privileges have been established.

4

litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A). *See also Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 163 (N.D. Ill. 2017) (quoting *Sandra T.E.*, 600 F.3d at 618) (the work product doctrine protects "documents prepared 'in anticipation of litigation for the purpose of analyzing and preparing a client's case.'"). Material that constitutes ordinary or fact work product may be discovered upon a showing of substantial need and an inability to obtain substantially equivalent information without undue hardship. FED. R. CIV. P. 26(b)(3)(A). A "far strong showing of necessity and unavailability by other means . . . would be necessary to compel disclosure" of opinion work product, which consists of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Timmermann's Ranch and Saddle Shop, Inc. v. Pace*, No. 11 C 1509, 2016 WL 1181792, at *2 (N.D. Ill. Mar. 28, 2016) (quoting *Upjohn*, 449 U.S. at 401-02). The work product doctrine "'is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts.'" *Baxter Int'l, Inc.*, 320 F.R.D. at 162-63 (quoting *Sandra T.E.*, 600 F.3d at 622). As with the attorney-client privilege, "[t]he party asserting the work product doctrine bears the burden of establishing that the doctrine applies to each document as to which it is asserted." *Id.* at 163 (citing *Miyano Mach., USA, Inc. v. MiyanoHitec Mach., Inc.*, 257 F.R.D. 456, 460 (N.D. Ill. 2008)).

**B.     Analysis**

The documents identified on the Meyer and Harvest privilege log prepared by counsel for Prairie Land bear the following designations: (1) "Patent" and "Patent Search for Expert"; (2) "Action Plan," "Action Item," and "PTAB Related Response v1."; and (3) "Draft Expert Report of Bruce Meyer" and "Draft Expert Declaration of Bruce Meyer for Inter Partes Review." The Court addresses each category of documents in turn.

**1.     Patent and Patent Search for Expert**

A majority of the disputed document entries are identified on the privilege log as "Patent" or "Patent Search for Expert" and are designated as protected attorney work product. (Doc. 182-7). Sioux Steel objects that the privilege log fails to provide the author, date, recipients, and subject matter of those patents, leaving Sioux Steel unable to "glean . . . the basis for the asserted privilege." (Doc. 182-1, at 7, 9) (citing *Muro v. Target Corp.*, No. 04 C 6267, 2006 WL 3422181, at *2 (N.D. Ill. Nov. 28, 2006)). Prairie Land has provided declarations, however, explaining that all of the patents on the privilege log were part of the research its attorney and expert conducted to prepare defenses to Sioux Steel's claims. (Doc. 190, at 6 and n.3) ("The document description 'Patent' in the privilege log refers to an actual patent that was reviewed by Prairie Land's counsel and/or its expert as part of trial preparation. . . . The description 'Patent Search for Expert Report' refers to spreadsheets listing patents that had been reviewed as part of that trial preparation process."); (Doc. 191, Meyer Decl., ¶ 8; Doc. 192, Fieschko Decl., ¶¶ 16, 17; Doc. 194, Van Camp Decl., ¶ 17).

This Court agrees with Prairie Land that prior art searches conducted in anticipation of litigation constitute work product and are protected from disclosure. *See*

*e.g., Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 508, 511 (S.D.N.Y. 1992) (where prior-art "search was made to aid in current and anticipated litigation, . . . its fruits come squarely within the ambit of the work-product doctrine. . . . The disclosure of this body of information . . . will allow defendants in effect to appropriate the research and labors and, to a degree, the analysis of the attorney's agent."); *Sawgrass Sys. Inc. v. BASF Aktiengesellschaft*, No. 99-C-7242-DT, 1999 WL 358681, at *4 (E.D. Mich. Feb. 26, 1999) ("While Sawgrass is correct in asserting that the underlying prior art information is itself publicly available, its argument fails because ultimately what it seeks is not the information, but the product of BASF's—or more precisely, its attorneys'—labors."). Where, as here, revealing the information Sioux Steel requests (including the author, date, recipients, and subject matter of the patents) would inevitably disclose the patents themselves, the motion to compel this information is properly denied.[2] FED. R. CIV. P. 26(b)(5)(A), 45(e)(2)(A) (a party withholding information as privileged must describe it "without revealing the information itself privileged or protected."); *Sawgrass*, 1999 WL 358681, at *5 ("While in many cases it may be possible to disclose the identity of a document without disclosing its contents (and thus revealing the attorney's work product), this is simply not possible with regard to a patent.").

That does not end the Court's inquiry, however, because neither the privilege log nor any of the declarations Prairie Land submitted in response to the motion contain sufficient information to demonstrate that the patent searches were done "in anticipation of litigation." While the declarations suggest that the searches took place after Prairie Land received notice of Sioux Steel's lawsuit on February 12, 2016, the privilege log lacks

---

[2] Meyer's expert declaration submitted for *inter partes* review before the PTAB identifies the specific patents he affirmatively relied upon for that report. (Doc. 194-1).

any dates or other information necessary to confirm this assertion.[3] (Doc. 191, Meyer Decl., ¶ 8; Doc. 192, Fieschko Decl., ¶¶ 12-17; Doc. 194, Van Camp Decl., ¶ 17). For this reason, a revised privilege log must be submitted providing: (1) the dates (or date range) when the patents were compiled and by whom, and (2) the dates (or date range) when the patents were reviewed and by whom. With respect to the spreadsheets listing patents, the revised privilege log must identify the author of the spreadsheet and the date (or date range) it was created.

In its reply brief, Sioux Steel argues for the first time that since Meyer is a testifying expert, he must disclose any patents he "considered" in preparing his opinion, even if he did not ultimately rely upon them in his expert declaration to the PTAB. (Doc. 197, at 11-12) (citing *U.S. v. Dish Network, L.L.C.*, 297 F.R.D. 589, 594-95 (C.D. Ill. 2013) ("A testifying expert must disclose and therefore retain whatever materials are given to him to review in preparing his testimony, even if in the end he does not rely on them in formulating his expert opinion, because such materials often contain effective ammunition for cross-examination."). The Court declines to address this untimely argument since Prairie Land did not have an opportunity to respond to it. As a result, the Court makes no finding at this time concerning whether Meyer or Prairie Land will be required to disclose specific additional patent information during expert discovery.

### 2. Action Plan, Action Item, and PTAB Related Response v1

Five of the entries on the privilege log are labeled "Action Plan," "Action Item," and "PTAB Related Response v1." Prairie Land says that these documents are "explicitly

---

[3] The Court notes that in response to Sioux Steel's First Set of Interrogatories No. 11, Prairie Land states that patent searches "were conducted on February 27, 2015 and thereafter by Prairie Land's counsel and were authorized by Duane Chaon," with findings "communicated to Duane Chaon, Joe McKenna and Bruce Meyer." (Doc. 182-4, at 16).

related to trial preparation" and so are protected by the attorney-client privilege and work product doctrine. (Doc. 190, at 11). According to Prairie Land, the document descriptions are drawn directly from the titles on the documents themselves, and since none of the five documents has any dates or authors, none are provided. (*Id.*; Doc. 194, Van Camp Decl., ¶¶ 14-16). In Prairie Land's view, it "cannot provide information that does not exist." (*Id.*). The Court disagrees.

Even if the documents themselves do not identify a date or author, Prairie Land offers no reason why this information cannot be determined through reasonable investigation. To establish protection under the work product doctrine, Prairie Land needs to demonstrate that the documents were created in anticipation of litigation, so sometime after it received notice of Sioux Steel's lawsuit on February 12, 2016. The privilege log must be revised to provide the dates (or date range) when the documents were prepared and by whom. For purposes of the attorney-client privilege, moreover, the privilege log must identify who sent and received each document, and the dates (or date range) when this occurred. *See Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 735 (N.D. Ill. 2014) ("[D]isclosure of a document to a third party waives attorney-client privilege unless the disclosure is necessary to further the goal of enabling the client to seek informed legal assistance.").

In a related argument, Sioux Steel objects that Prairie Land has not provided necessary information to allow the Court to assess whether "a document was generated in Meyer's capacity as a fact witness vs. an expert witness." (Doc. 197, at 8). Sioux Steel argues that the Court needs to know the date Meyer was formally "retained" as an expert because any efforts on his part to develop defenses to the infringement claim *before* that

9

date would not be subject to work product protection. (*Id.*). In the Court's view, the real question remains not the date of Meyer's retention as an expert but whether the document in question was created in anticipation of litigation. If Prairie Land's counsel received the infringement notice and subsequently contacted Meyer for assistance in developing litigation defenses, which led to the creation of the documents in question, the documents would qualify as being made "in anticipation of litigation" even if Meyer was not formally (or informally) retained as an expert. *See, e.g., Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 615 (N.D. Ill. 2000) ("[W]hether a document is protected depends on the motivation behind its preparation, rather than on the person who prepares it.").

Assuming the trial preparation documents were created in anticipation of litigation, Sioux Steel has not at this time demonstrated a substantial need for the documents styled as "Action Plan," "Action Item," or "PTAB Related Response v1," or an inability to obtain the substantially equivalent information without undue hardship. And Sioux Steel would not be entitled to discover the mental impressions of counsel in any event. FED. R. CIV. P. 26(b)(3)(A), (B). However, as with each of the categories of withheld documents, if after the privilege log has been supplemented it turns out that a document was created or prepared before Sioux Steel sent the draft complaint to Prairie Land on February 12, 2016, then Sioux Steel may seek production of those documents and, if necessary (after complying with L.R. 37.2) may file a motion to compel based on the new information.

    **3.**    **Draft Expert Report and Declaration of Bruce Meyer**

The final category of documents on the privilege log consists of drafts of Meyer's expert report and expert declaration. These are expressly protected from disclosure by

Rule 26(b)(4)(B), which covers "drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." *Johnson v. City of Rockford*, No. 15 C 50064, 2018 WL 1508482, at *1 (N.D. Ill. Mar. 27, 2018) (quoting FED. R. CIV. P. 26(b)(4)(B)). Once again, however, the privilege log must be updated to provide the dates (or date range) when the drafts were prepared and by whom to confirm it was in anticipation of litigation. Since Prairie Land has also asserted the attorney-client privilege for these drafts, the log must further identify who sent and received each document, and the dates (or date range) when this occurred. *Miller UK Ltd.*, 17 F. Supp. 3d at 735.

Sioux Steel stresses that not all documents prepared by an expert are protected from disclosure. Rather, under Rule 26(b)(4)(C), communications between a party's attorney and an expert providing a written report must be disclosed to the extent they: "(i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." FED. R. CIV. P. 26(b)(4)(C)(i)-(iii). Sioux Steel asserts that "Meyer and Harvest's failure to identify the dates of the allegedly privileged documents, and failure to adequately identify the communicants and recipients associated with each document, renders it impossible to determine if Rule 26(b)(4)(C) applies." (Doc. 182-1, at 10-11). As noted above, the Court is requiring supplemental information to be provided on the log.

Sioux Steel further speculates that some of the withheld documents may contain information falling under one of the three exceptions, and so moves the Court for an order

11

requiring Meyer and Harvest "to produce all documents that fall within the exceptions." (Doc. 182-1, at 10-11). The Court denies this aspect of the motion. Sioux Steel has not identified any specific discovery request seeking expert compensation or other information falling under the exceptions. Nor has it identified any response refusing to produce such material based on a claim of privilege. If and when that happens, Sioux Steel may file a motion to compel and provide the Court with the necessary underlying materials for consideration.[4]

   4.     **Other Matters**

As of the filing of the March 6, 2020 response to the motion to compel, Prairie Land was working on preparing a second privilege log relating to a second production of documents from Meyer and Harvest to Sioux Steel. (Doc. 190, at 5). In light of Sioux Steel's acknowledgment that it "remains focused on obtaining the relevant discovery and not on Defendants' [alleged] procedural missteps and failure to properly respond or object to the subpoenas," (Doc. 197, at 4 n.3), the Court will not address Sioux Steel's argument, raised for the first time in its reply brief, that Prairie Land waived its right to withhold any documents from the second production on privilege grounds due to untimeliness. If Prairie Land has withheld documents on the basis of privilege from the second production and has not yet produced a privilege log, it must do so by June 17, 2020. The Court likewise declines to address Sioux Steel's undeveloped argument that Meyer and Harvest, through Prairie Land, may have improperly withheld certain documents not on privilege grounds, but on a mistaken assertion that the documents are nonresponsive.

---

[4] Under the district judge's schedule, the parties will not be making expert disclosures under Rule 26(a)(2) until "twenty-eight (28) days after the Court's claim construction ruling, unless an earlier date for such discovery is agreed to by the parties and ordered by the Court." (Doc. 152, at 12).

## **CONCLUSION**

For the reasons stated above, Sioux Steels' Motion to Compel Compliance with Third-Party Subpoenas [182] is granted in part and denied in part. The motion is granted in that Prairie Land must produce a supplemental privilege log consistent with this opinion by June 17, 2020, but is denied in all other respects.

ENTER:

Dated: June 3, 2020

_____
SHEILA FINNEGAN
United States Magistrate Judge