IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIOUX STEEL COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PRAIRIE LAND MILLWRIGHT SERVICES, INC. and DUANE CHAON,<br><br>Defendants. | Case No. 16-cv-2212<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sioux Steel Company (Sioux Steel) brings this suit against Defendants, Prairie Land Millwright Services, Inc. and Duane Chaon (collectively, Prairie Land), accusing them of infringing on Sioux Steel's intellectual property rights. As set forth in Sioux Steel's First Amended Complaint (Dkt. 165), Sioux Steel is pursuing claims of patent infringement under 35 U.S.C § 271; false advertising under the Lanham Act, 15 U.S.C. § 1125(a); and state law claims. As for the patent claims, Sioux Steel alleges that Prairie Land has infringed U.S. Patent No. 8,967,937 ("the '937 Patent"). Prairie Land denies infringement and argues that the disputed claim terms should be analyzed under 35 U.S.C. § 112(f).

**A. Background and Procedural History**

Sioux Steel, a South Dakota corporation, developed a modular storage bin sweep that utilizes interconnected paddles to sweep and empty grain bins. The use of paddles allows grain bins to be emptied more efficiently and is a safer system than

1

the previous systems.[1] The '937 Patent discloses a "modular storage bin sweep system." U.S. Patent 8,967,937, Abstract. (Dkt. 174-1). This system "utiliz[es] paddles to sweep particulate matter across a floor [and] may comprise a sweep assembly including at least two units connectable together." *Id*. The system may be comprised of a "power unit configured to the paddles, a drive unit configured to move the sweep assembly," and in some instances "a traction enhancement structure" and/or "a pivot unit . . . to permit a degree of pivotability." *Id*. The '937 Patent was issued on March 3, 2015, with Sioux Steel as the sole assignee. *Id*. The '937 Patent contains twenty-eight claims—one independent claim and twenty-seven dependent claims.

In filing this lawsuit, Sioux Steel alleged that Prairie Land's "Bin Gator" bin paddle sweep products infringe the '937 Patent. On April 28, 2016, Prairie Land raised the invalidity of the '937 Patent in its Answer and Counterclaims (Dkt. 22); it did not raise non-infringement based on a § 112(f) interpretation of the patent claims. (*Id.*). However, in responding to a dismissal motion, Prairie Land amended their pleadings to include the § 112(f) non-infringement defenses. (Dkt. 32). On August 8, 2016, the parties stipulated to the dismissal of the non-infringement claim including Prairie Land's § 112(f) argument. (Dkt. 38). On September 21, 2016, Prairie Land petitioned for *Inter Partes* Review (IPR) with the Patent and Trial Appeals Board ("PTAB") seeking to invalidate the '937 Patent. *See* IPR2016–01873 (Dkt. 169-2). This proceeding was conducted pursuant to the standard outlined in *Phillips v. AWH*

---

[1] Previously, mechanical sweeps used an auger system that relied on an exposed helical blade that could cause serious injury. Auger sweeps also had the disadvantage of not being able to reach the entire bin floor, therefore preventing them from removing the maximum amount of grain. (Dkt. 174 at 9-10).

*Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*), requiring claim terms to receive the "broadest reasonable construction in light of the specification as it would be interpreted by one of ordinary skill in the art." *Id.* at 1316 (citation omitted). *See also Deep Green Wireless LLC v. Ooma, Inc.*, 809 F. App'x 804, 806 (Fed. Cir. 2020) ("When an IPR is instituted from a petition filed before November 13, 2018, as here, the claims are given the 'broadest reasonable interpretation' consistent with the specification.").

In its April 4, 2018 decision, the PTAB ruled that Prairie Land did not show that claims 1–28 were unpatentable and found Patent '937 to be valid. The Board construed the term "carry" as "supporting the paddles while they move". (Dkt. 169-2 at 15). The Federal Circuit recently affirmed the Board's decision. *Prairie Land Millwright Servs. v. Sioux Steel Co.*, No. 2019-1668, 2020 U.S. App. LEXIS 18770 (Fed. Cir. June 15, 2020) (*per curium*). Following PTAB's decision, Prairie Land reasserted their non-infringement and non-patentability counterclaims and affirmative defenses, including that based on 35 U.S.C. § 112(f). (Dkt. 172).

The parties have presented their respective views on the disputed claims in briefing and in a joint claim construction chart (Dkt. 178) and the Court held a claim construction hearing on February 4, 2020. (Dkt. 216). This Court now construes the disputed claim terms.[2]

---

[2] Prior to the hearing the parties agreed that a "pivot structure" which appears in claim 1 will be construed to mean a "structure containing a pin or shaft that allows for movement about such pin or shaft." (Dkt. 180). Further, at the start of the hearing, without objection from Prairie Land, the Court determined that "weight support" used in claim 14 will be construed as "an extended support for a weight" and the term "weight support" used in claim 21 requires no construction. (Dkt. 216, 2/4/20 Tr. at 5).

3

## B. Applicable Standard

### 1. Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (citation omitted). Claim construction is a matter of law for the Court to determine. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996); *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1357-58 (Fed. Cir. 2012); *see also AFG Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001) ("the claim construction becomes the basis of the jury instructions, should the case go to trial.").

Claim construction analysis begins with the words of the claims themselves, giving those words their ordinary and customary meaning, which is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13; *see also InterDigital Communs., LLC v. ITC*, 690 F.3d 1318, 1324 (Fed. Cir. 2012). A court interpreting a claim "should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Wenger Manufacturing, Inc. v. Coating Machinery Systems, Inc.*, 239 F.3d 1225, 1232 (Fed. Cir. 2001) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d

4

at 1315. "After considering [] intrinsic evidence, a court may also seek guidance from extrinsic evidence such as expert testimony, dictionaries, and treatises." *H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1332 (Fed. Cir. 2014).

### 2. Means-plus-function: 35 U.S.C. §112(f)

Prairie Land maintains that the terms in dispute in the '937 Patent are subject to 35 U.S.C. § 112(f), which provides: "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."[3]

Prairie Land argues that § 112(f) applies because the claim "terminology fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" (Dkt. 175 at 8, *quoting Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348–1349 (Fed. Cir. 2015) (en banc) (citations omitted)). In *Williamson*, the court observed that in enacting §112(f), Congress allowed patentees to "express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function, while placing specific constraints on how such a limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the

---

[3] Because of the filing date of the patent application here, September 9, 2011, "the means-plus-function provision applicable in this case is 35 U.S.C. § 112, ¶ 6, which is now codified, without change material to this case, as 35 U.S.C. § 112(f)." *Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*, 958 F.3d 1348, 1352 n.1 (Fed. Cir. 2020). The parties refer to § 112(f) and for consistency the Court will do so as well.

5

specification as corresponding to the claimed function and equivalents thereof." *Id.* at 1347. In determining whether to apply this analysis, the Federal Circuit recently explained:

> First, we determine if the claim limitation is drafted in means-plus-function format. As part of this step, we consider whether the claim limitation connotes 'sufficiently definite structure' to a person of ordinary skill in the art. If we conclude that the limitation is in mean-plus-function format, the second step requires us to review the specifications to identify the structure that performs the claimed function(s) and thus 'corresponds to' the claimed means. While related, these two inquiries are distinct.

*MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 1344 (Fed. Cir. 2019).

In determining whether the claim is in means-plus-function format, courts have acknowledged the importance of the presence [or absence] of the word "means." *Williamson*, 792 F.3d at 1348. The use of the word "means" creates a rebuttable presumption that § 112(f) applies. *Id.*; *see Personalized Media Communications, LLC v. International Trade Commission,* 161 F.3d 696, 703–04 (Fed. Cir. 1998*).* The converse is true: the failure to use the word "means" creates a rebuttable presumption that § 112(f) does not apply. *Williamson*, 792 F.3d at 1348. *MTD Prods.*, 933 F.3d at 1341 ("If [the claim limitation] does not [use the word 'means'], we apply a rebuttable presumption that the term conveys sufficiently definite structure and is not subject to § 112, ¶ 6."). However, when a claim term lacks the word "means," the presumption can be overcome if the challenger demonstrates that the claim term fails to "recite sufficiently definite structure" or else recites "function without reciting sufficient structure for performing that function." *Id.* (citations omitted).

6

The terms of the claim, irrespective of the presence of the word "means," are to be analyzed and understood by persons of ordinary skill in the art and whether this person would understand the term to have "a sufficiently definite meaning as the name for structure." *MTD Prods.*, 933 F.3d at 1344; *see also Greenberg v. Ethicon Endo-Surgery, Inc.,* 91 F.3d 1580, 1583 (Fed. Cir. 1996) ("What is important is . . . that the term, as the name for structure, has a reasonably well understood meaning in the art."). A critical question is whether "the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure," including either a structure or a class of structures. *MTD Prods.*, 933 F.3d at 1341 (quoting *Skky, Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014, 1019 (Fed. Cir. 2017) (citing *TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 731 F.3d 1336, 1347 (Fed. Cir. 2013)) (claim term "wireless device means" did not invoke § 112, ¶ 6 because it denotes a class of structures).

"One way to demonstrate that a claim limitation fails to recite sufficiently definite structure is to show that, although not employing the word 'means,' the claim limitation uses a similar 'nonce word that can operate as a substitute for means in the context of § 112, para. 6.'" *MTD Prods.*, 933 F.3d at 1341 (citation omitted). Further, even if the claims recite a nonce term followed by functional language, other language in the claim "might inform the structural character of the limitation-in-question or otherwise impart structure" to the claim term. *Id.* at 1341–42 (quoting *Williamson*, 792 F.3d at 1351).

7

In assessing whether § 112(f) applies, the Court considers the "entire passage including functions performed by the introductory phrase." *Id.* at 1342. The ultimate question is whether "the claim language, read in light of the specification, recites sufficiently definite structure to avoid § 112." *Media Rights Techs. Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1372 (Fed. Cir. 2015) (citing *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1099 (Fed. Cir. 2014)). The Court analyzes whether the "[c]laims are interpreted in light of the written description supporting them, and that is true whether or not the claim construction involves interpreting a 'means' clause." *MTD Prods.*, 933 F.3d at 1342 (citing *Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1356 (Fed. Cir. 2011), *overruled on other grounds by Williamson*, 792 F.3d at 1339).

With these background principles in mind, the Court turns to the terms in dispute.

## C. Discussion

### 1. A pivot unit

Sioux Steel asks the Court to construe "a *pivot unit* configured to carry a portion of the succession of interconnected paddles" as a "unit allowing for pivotability configured to contain and direct the course of a portion of the series of paddles connected to one another." (Dkt. 174 at 21). Prairie Land urges the Court to construe "pivot unit" pursuant to § 112(f) and construe "a pivot unit configured to carry" as "the structure, material, or acts described in the specification which carry a portion of the succession of interconnected paddles" (i.e., "support the weight of a portion of paddles"), and thus encompasses a sprocket or similar "rotatable driven member"

8

which supports the paddles' weight via their chain and other "endless loop member." (Dkt. 178-1 at 2).

The Court construes the term "pivot unit" consistent with Sioux Steel's proposed construction. First, the claim does not use the word "means"; therefore, the presumption weighs against relying on § 112(f). *Williamson*, 792 F.3d at 1348. Prairie Land argues the word "unit" is a nonce term and a substitute for the word "means." (Dkt. 175 at 5). But the term "unit" is not to be analyzed in isolation, rather the Court is to consider other language in the claim that "might inform the structural character of the limitation-in-question or otherwise impart structure" to the claim. *MTD Prods.*, 933 F.3d at 1341–42 (citation omitted). To determine the meaning of the term, the Court must consider whether "the claim language, read in light of the specification, recites sufficiently definite structure to avoid § 112(f)." *Media Rights Techs. Inc.*, 800 F.3d at 1372. For the following reasons, the Court concludes "pivot unit" is a definite structure and declines to construe the term under § 112(f).

Claim 1 gives context to the term "pivot unit" when it states that the pivot unit includes a "pivot structure positioned between and connecting the sections [of interconnected paddles] to permit pivoting..." 11:10-14. *See Phillips*, 415 F.3d at 1314 ("the claims themselves provide substantial guidance as to the meaning of particular claim terms"). Further, prior to the hearing the parties agreed "pivot structure" will be construed to mean "a structure containing a pin or shaft that allows for movement about such pin or shaft" (Dkt. 180), giving more definition to the meaning of the "pivot unit."

9

In addition, the dependent claims also state that the pivot unit "also forms the drive unit"; the pivot structure "comprises one or more pivot arms…the pivot arms and the pivot tabs being pivotally fastened together by pivot pins"; the pivot unit is "positioned between the power unit and the drive unit"; and the pivot unit includes a "surface engaging portion." (Claims 4, 6, 8, 10). *See TEK Glob., S.R.L. v. Sealant Sys. Int'l*, 920 F.3d 777, 786 (Fed. Cir. 2019) (dependent claims suggested that § 112, ¶ 6 did not govern because they "add[ed] limitations that either describe particular structural features or flesh out whether the term has a particular structural meaning.") (citation omitted). Furthermore, Figure 11 depicts, in detail, a "schematic exploded perspective view of the pivot unit of the bin sweep system, according to an illustrative embodiment, and shown isolated from other elements of the system." The pivot unit (90), is shown as comprising the entire object in Figure 11 and containing a number of structural elements. (Fig. 11).

Finally, the Specification states "units" may have different lengths that: (1) correspond to the length of the sweep assembly and the radius of the grain bin, and (2) may be connected to form a sweep assembly. 4:62–5:8. Furthermore, Column 9 provides greater detail about the "pivot unit" that convinces the Court it is a definite structure. It states that the "pivot unit" may "have a pair of connected sections that are able to move with respect to each other, and may be able to pivot about a substantially horizontal axis with respect to each other" (9:31-35), and it may "be combined or integrated with the drive unit." 9:53–54.

10

In light of all of the above-described intrinsic evidence, the Court adopts Sioux Steel's proposed construction and construes the term "pivot unit" as a "unit allowing for pivotability".

**2. Carry**

Next, the Court turns to the term "carry." Prairie Land urges the court to follow the PTAB's interpretation that "carry" means "supporting the paddles while they move" and supporting "the weight of a portion of paddles". (Dkt. 178-1 at 2); *see* IPR2016–01873 (Dkt. 169-2, p.14). First the Court acknowledges that it is not bound by the Patent Office's interpretation. *SRAM Corp. v. AD-II Engineering, Inc.*, 465 F.3d 1351, 1359 (Fed. Cir. 2006); *PPC Broadband, Inc. v. Corning Optical Communs. RF, LLC*, 815 F.3d 734, 742 (Fed. Cir. 2016); *see also Rensselaer Polytechnic Inst. v. Apple Inc.,* 2014 U.S. Dist. LEXIS 5186, at *29 (N.D.N.Y. Jan. 15, 2014) ("[t]he focus of the PTAB in [*inter partes* review] is upon validity; even if an IPR is conducted, that administrative body will not engage in claim construction[;] [i]n making its determination, the PTAB is mandated to accord claim terms their broadest possible construction.").

However, the PTAB determined the meaning of the term "carry" as supporting the paddles while they move "in accordance with its plain and ordinary meaning".[4] (Dkt. 211-2 at 14). PTAB noted Figure 13 is consistent with this construction. (*Id.* at 14-

---

[4] PTAB noted that neither party urged the Board to interpret "carry" in any way other than its plain and ordinary meaning. (Dkt. 211-2 at 13-14).

11

15).[5] In addition, as noted by Prairie Land, the two terms (carry and supporting) are used interchangeably twice to convey the movement of the paddles. (Dkt. 175 at 9, comparing 9:65 ("endless loop member *carrying* the paddles") to 5:50–51 ("endless loop member *supporting* the succession of paddles") (emphasis added). Further, the Specification describes that the "power unit may comprise a first base portion which carries a portion of the succession of interconnected paddles". 5:41–43. The specification thus shows that the ordinary and customary meaning of carry in this context is supporting the paddles.

Sioux Steel argues that "carry" should be construed as "to contain and direct." (Dkt. 174 at 22). Sioux Steel argues that PTAB's construction cannot be adopted because it considered the wrong figure since it did not analyze the stand-alone pivot unit. (Dkt. 174 at 18 (arguing the figure with the sprocket, Figure 13, should not have been analyzed and the stand-alone figure, Figure 11, should have been considered when construing the word)). While the Court agrees that Figure 13 is not dispositive, PTAB did not make their decision solely based on Figure 13, but rather noted their construction was consistent with Figure 13. (*See* Dkt. 211-2 at 14-15, relying on figs. 7-8 & 13 and the "endless loop" of paddles).

To argue for its construction, Sioux Steel also relies on the opinion of its expert, Jeffrey D. Decker, that "…[t]he housing of the units aid to keep the paddles contained within the linear array and along the path that extends between the

---

[5] Specifically, PTAB found that "the embodiment of pivot unit/drive unit shown in Figure 13 is configured to support the weight of a portion of paddles 18 via rotatable driven member 60 while paddles 18 move." (*Id*. at 14).

12

inboard and outboard ends of the sweep." (Dkt. 174 at 22-23). However, the Court finds the intrinsic evidence in the Specification more convincing than the expert's opinion. And the Court does not find ambiguity in the patent such that it needs expert testimony to construe the term "carry." *See Endo Pharm., Inc. v. Actavis LLC*, 922 F.3d 1365, 1371 (Fed. Cir. 2019) ("While courts may consider extrinsic evidence in claim construction, such evidence is generally of less significance than the intrinsic record.") (citation and quotations omitted); *BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc.*, 519 F. App'x 1008, 1015 (Fed. Cir. 2013) (court looks to expert testimony if "intrinsic record leaves ambiguities and unresolved questions."); *see also Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (terms that are "not technical terms of art" generally "do not require elaborate interpretation."). The Court finds that a person of ordinary skill in the art in question at the time of the invention would understand carry to mean "supporting the weight" of the paddles, and that finding is supported by the language of the patent itself as well as the PTAB's interpretation of the term. Finally, under *Phillips*, Sioux Steel's proposed construction would be broader than the "broadest reasonable construction in light of the specification of the patent in which they appear." *Phillips*, 415 F.3d at 1316.

For these reasons, the Court adopts Prairie Land's proposed construction and construes the term "carry" as "supporting the weight."[6]

---

[6] Sioux Steel argues Prairie Land argued in its brief in the Federal Circuit that the broadest reasonable construction of "carry" does not just mean "supporting the weight," but encompasses the words "convey" and "transport." (Dkt. 189-A at 4). Apparently, Defendant argued to the Federal Circuit that "under the broadest reasonable construction standard, where two claim constructions are reasonable, the broader construction governs" such that PTAB's construction was not the broadest one. *Id.* at 5. Prairie Land responds that its Federal

13

### 3. A surface engaging portion

This phrase appears in Claim 1 as a "surface engaging portion configured to engage a surface below the sweep assembly and move the sweep assembly with respect to the surface . . ."

Sioux Steel argues that "surface engaging portion" does not need construction, but if construed it should be construed in light of the claims and other intrinsic information. (Dkt. 174 at 27). Similar to "pivot unit", Prairie Land argues "surface engaging portion" should be construed under § 112(f) and should be limited only to the structure as stated in the Specification or equivalents thereof. (Dkt. 175 at 15). However, Prairie Land also asserts that regardless of whether the Court construes the term under § 112(f), the construction should not be as constrained as Sioux Steel's proposed construction. (*Id.*). For the reasons discussed below, the Court construes the phrase in accord with Sioux Steel's proposed construction.

This claim phrase does not use the word "means," which means the burden rests on Prairie Land to rebut the presumption. *Williamson*, 792 F.3d at 1348. First, the term is not to be analyzed in isolation, but the Court is to consider other language in the claim. *MTD Prods.*, 933 F.3d at 1341–42 (citation omitted). Claim 1 indicates the "surface engaging portion" is a structural part of the drive unit that engages the surface below the sweep assembly. 11:1–3. Further, Claim 1 indicates the "surface

---

Circuit arguments have no bearing on this Court's claim construction determination and asserts Sioux Steel has itself revised its positions. (Dkt. 195 at 1-2). The Court is not persuaded by these arguments. In any event, the Court "has an independent obligation to determine the meaning of the claims, notwithstanding the views asserted by the adversary parties." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995).

engaging portion" comprises at least one surface engaging wheel. 11:4–6. The next step is to analyze the claim in light of the specification. *Media Rights Techs. Inc.*, 800 F.3d at 1372. When looking at column 7, the Specification indicates permissive language describing the "surface engaging portion." These descriptions include being mounted on the second housing segment, including a surface engaging wheel, and including a drive train. 7:15–34. Therefore, the claim language read in light of the Specification sufficiently recites a sufficient, definite structure to perform the claimed function. *Rembrandt Data Techs., LLC v. AOL, LLC*, 641 F.3d 1331, 1340 (Fed. Cir. 2011). The Court finds § 112(f) is not applicable.

Prairie Land next argues that the "surface engaging portion" should be construed to include a "drive train." An embodiment states "the surface engaging portion may include a drive train that is configured to transmit power from the succession of the paddles (such as the endless loop member) to the wheel or wheels." 7:34–37. However, it is improper to "import[ ] limitations from the specification into the claims," *Phillips*, 415 F.3d at 1323. By adopting Prairie Land's construction, this Court would be importing a limitation on the claim from the Specification, which the *Phillips* court forbids.

Despite Sioux Steel arguing this term does not need construction, the Court holds that this term is subject to construction to resolve a disputed term and clarify its technical scope.[7] *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir.

---

[7] The Federal Circuit has held that a finding that a claim term "needs no construction" or has the "plain and ordinary meaning" is inadequate when it does not resolve the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) (where parties agreed that "only if" has a common meaning, but then proceeded to dispute

15

1997). The Court adopts Sioux Steel's construction and holds "surface engaging portion" means "a portion of the drive unit configured to engage a surface."

### 4. A motor portion

A motor portion is contained in Claim 11 and refers to the power unit that "includes a motor portion configured to move the succession of interconnected paddles along the path." Sioux Steel argues that "motor portion" does not need construction, but if construed it should be construed in light of the claims and other intrinsic information. (Dkt. 174 at 30). Similar to the "surface engaging portion", Prairie Land argues "motor portion" should be construed under 35 U.S.C. § 112(f), but even if it is not, Sioux Steel's proposed construction is too constrained. (Dkt. 175 at 16). For the reasons discussed below, the Court construes the phrase in alignment with Sioux Steel's proposed construction.

Again, the claim does not use the word "means"; but the patent provides sufficiently definite structure to avoid interpretation under § 112. *Media Rights Techs. Inc.*, 800 F.3d at 1372. For example, the specification states that "motor portion" is part of the power unit, it is connected to the first base portion, and it is mounted on the first housing segment. 6:41-50. Further the motor portion may "comprise a motor connected to the rotatable drive member", "a hood that encloses the motor," and a "gearset [] connects the motor to the rotatable drive member." *Id*.

---

the scope of that claim term … the "ordinary" meaning of term did not resolve the parties' dispute, and "claim construction required the court to determine what claim scope is appropriate in the context of the patents-in-suit.")

16

*See TEK Glob., S.R.L.*, 920 F.3d at 786 (specification showed patent "contemplate[d] a conduit having physical structure.").

The Court therefore construes the term "motor portion" consistent with Sioux Steel's proposal to mean "a portion of the power unit, which includes at least a motor."

### 5. Traction enhancement structure

This term appears in Claims 12 and 21. Sioux Steel believes there is no construction needed, but if construed it should be construed as "structure for increasing the traction or tractability of the drive unit." Sioux Steel relies on the claims and other intrinsic evidence. (Dkt. 174 at 35). Prairie Land argues "traction enhancement structure" should be construed under 35 U.S.C. § 112(f) because the word "structure" does not recite a sufficient definite structure, but only recites a function. (Dkt. 175 at 17–19).

Similar to all the above terms, this claim does not use the word "means" and the burden is placed on Prairie Land. *Williamson*, 792 F.3d at 1348. The phrase is not to be analyzed in isolation. *MTD Prods.*, 933 F.3d at 1341–42 (citation omitted). As with the previous terms, the patent provides sufficiently definite structure to avoid interpretation under § 112(f). *Media Rights Techs. Inc.*, 800 F.3d at 1372.

Despite Sioux Steel arguing this term does not need construction, the Court holds that this term is subject to construction to resolve a disputed term and clarify its technical scope. *U.S. Surgical Corp.*, 103 F.3d at 1568. In terms of construction, the "traction enhancement structure", according to claim 12, is mounted on the drive unit. 11:47–48. This provides a definite structural aspect to the traction enhancement

structure. Further, Claims 13-21 explicitly include other structural aspects, which lead the Court to conclude that the "traction enhancement structure" is a definite structure. *See generally* 11:49–12:37. For example, Claim 21 identifies the "traction enhancement structure" as including a weight support mounted on the drive unit and extending rearwardly of the drive unit to terminate rearwardly of the at least one wheel and a weight removably mounted on the weight support. 12:30–37. For these reasons the Court construes the phrase "traction enhancement structure" as "structure for increasing the traction or tractability of the drive unit."

**D. Conclusion**

For the reasons explained above, the disputed claim terms and phrases are construed as follows:

| **Disputed Claim Term** | **Court's Construction** |
| --- | --- |
| "pivot unit" | unit allowing for pivotability |
| "carry" | supporting the weight |
| "a surface engaging portion" | a portion of the drive unit configured to engage a surface |
| "motor portion" | a portion of the power unit, which includes at least a motor |
| "traction enhancement structure" | structure for increasing the traction or tractability of the drive unit |

18

E N T E R:

Dated: August 13, 2020

/s/ Mary M. Rowland

MARY M. ROWLAND
United States District Judge