IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **SIOUX STEEL COMPANY,** | ) |
| Plaintiff, | ) |
| v. | ) No. 16 C 2212 |
| **PRAIRIE LAND MILLWRIGHT SERVICES, INC.**, an Illinois corp., | ) Judge Mary M. Rowland<br>) Magistrate Judge Finnegan |
| and | ) |
| **DUANE CHAON,** | ) |
| Defendants. | ) |

## ORDER

Plaintiff Sioux Steel Company ("Sioux Steel") has filed suit against Defendants Prairie Land Millwright Services, Inc. ("Prairie Land") and its owner and President, Duane Chaon, alleging that several of the bin paddle sweep products Prairie Land manufactures infringe Sioux Steel's patent. Currently before the Court is Plaintiff's Motion to Compel Documents and Testimony Improperly Withheld as Privileged [276]. The Court heard oral argument on March 9 and May 10, 2021 (Docs. 314, 322), and has conducted an *in camera* review of each disputed document. For reasons set forth here, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND[1]

In the fall of 2011, Sioux Steel and Prairie Land filed separate applications to patent bin paddle sweep products. *Sioux Steel Co. v. Prairie Land Millwright Servs., Inc.*, No.

---

[1] This opinion assumes the reader's familiarity with the facts of this case as set forth in the Court's June 3, 2020 Order. *See Sioux Steel Co. v. Prairie Land Millwright Servs., Inc.*, No. 16 C 2212, 2020 WL 2900834 (N.D. Ill. June 3, 2020).

16 C 2212, 2020 WL 2900834, at *1 (N.D. Ill. June 3, 2020). In 2012, Prairie Land retained Harvest Engineering LLC ("Harvest") and its owner Bruce Meyer to assist with the sweep development process. According to Meyer, he was primarily involved with "the electrical controls and various electronic components controlling the operation of the sweeps." *Id*. (quoting Doc. 191, Meyer Decl., ¶ 4).

On February 12, 2016, Sioux Steel notified Prairie Land of its patent infringement allegations by emailing a copy of its Complaint in this case to Prairie Land's counsel. There is no dispute that since that time, Meyer has been serving as a testifying expert as to invalidity: he prepared an Expert Declaration on that issue dated September 21, 2016 as part of the *inter partes* review by the Patent Trial and Appeal Board. (Doc. 124-2). For the first time in response to Plaintiff's motion, Defendants claim that upon receiving notice of Plaintiff's lawsuit, Meyer also began serving as a consulting expert on a variety of other issues, including design modifications. (Doc. 289, at 6) (quoting *Sara Lee Corp. v. Kraft Foods Inc.*, 273 F.R.D. 416, 419 (N.D. Ill. 2011)) (Meyer is "an expert who wears 'two hats' by serving as both a non-testifying consultant and a testifying expert."). Based in part on Meyer's consulting role, Defendants are asserting privilege over certain written and oral discovery. Despite this, Defendants never provided Plaintiff with a specific retention date or other proof of the scope of Meyer's consulting expert representation. In response to an order from this Court, Defendants produced Meyer's retention agreement to Plaintiff and the Court on March 16, 2021. That agreement, which is dated June 16, 2016, indicates that Defendants' counsel, DeWitt Ross & Stevens, retained both Bruce and Stephen Meyer "to provide expert consulting services with regard to preparation for

trial . . . and to assist DeWitt Ross & Stevens to render legal services to Prairie Land with regard to" this lawsuit. The Meyers signed the agreement on June 21, 2016.[2]

During the course of discovery, Plaintiff issued requests for production to Defendants, and subpoenas to Meyer and Harvest. The parties have had an ongoing dispute concerning the privilege logs submitted by both Prairie Land and Harvest. Those logs identify numerous documents withheld under the work product doctrine and/or attorney-client privilege and characterized as having been "prepared in anticipation of litigation or for trial." (Doc. 276-2).

In this motion, Plaintiff argues that Defendants have waived any privileges over withheld materials unrelated to the subject of Meyer's expert testimony by failing to assert them in a timely manner. Alternatively, Plaintiff seeks to compel production of documents that it believes contain factual information reflecting Defendants' attempts to design around the Sioux Steel patent, and to compel deposition testimony from Meyer on this topic. Defendants deny that a finding of waiver is merited. They also insist they have produced factual information concerning the design around, including the designs themselves, withholding only protected documents that reveal the mental impressions, conclusions, and opinions of their attorneys and Meyer when he was acting as their consulting expert.

## **DISCUSSION**

In response to questioning from this Court at the May 10, 2021 hearing, the parties confirmed that they are in agreement that factual information related to attempts to design

---

[2] Defense counsel stated during the May 10, 2021 hearing that this letter "confirmed" Meyer's engagement as he had begun consulting with patent counsel on various litigation issues in February 2016 shortly after the filing of the lawsuit. As noted later, the *in camera* review of emails between Meyer and patent counsel appears to substantiate this.

3

around a patent is generally discoverable. This is so even though a party involved in such a design around is likely receiving advice of patent counsel during the process. As explained in *Illumina Inc. v. BGI Genomics Co.*, No. 20-CV-1465-WHO, 2020 WL 7047708 (N.D. Cal. Dec. 1, 2020), courts "routinely allow discovery into design around, notwithstanding that at some level it's all done ultimately at the direction of counsel and with a view toward litigation." *Id*. at *3. The reason for this, the court explained, is that "this type of discovery seeks to learn things the company has done or plans that it has made, and [f]acts are not protected by the work product doctrine." *Id.* (internal quotations omitted). Hence defendants "cannot declare off limits the entire subject matter of designing around [plaintiff's] patents. Any modifications [d]efendants have made to the accused products, or any plans [d]efendants have made to modify the accused products, to design around [plaintiff's] patents are not privileged or work product." *Id*. For this reason, Defendants did not object to Plaintiff deposing Chaon and another Prairie Land employee (Joe McKenna) concerning redesign efforts. And Defendants have clarified that they are not seeking to withhold from discovery any design-around drawings made by Meyer. Indeed, they believe the few drawings he made early in the process already have been produced.

      The question remains, however, whether Plaintiff may discover communications with defense counsel in which legal advice is sought or provided, or mental impressions or opinions are expressed, concerning the design-around effort. The answer is "no," for as the *Illumina* court observed, "actual attorney-client communications about a design around are still privileged, and an attorney written memo with thoughts and impressions about a design around is still work product." *Id.* As discussed later, while the work product

4

doctrine provides only a qualified immunity from discovery, a heightened showing of need is required to obtain opinion work product.

Plaintiff has provided conflicting statements regarding the extent to which it seeks to discover communications involving Meyer that reflect mental thoughts and impressions of Defendants' counsel. In the briefs, Plaintiff argued that Defendants had waived the privilege as to all topics that fall outside the scope of Meyer's expert testimony on invalidity. (Doc. 281, at 15). Plaintiff also indicated that if the Court rejected this waiver argument, it was still seeking "factual information and documents reflecting the conception of a design change or potential design change, communications regarding the design change, and the evaluation, testing and implementation of the design change." (*Id*. at 12). Plaintiff expressly denied seeking "discovery of the mental impressions of Defendants' counsel, such as an evaluation or opinion from counsel as to whether a proposed design infringes the `937 Patent." (*Id*.). *See also* (Doc. 296, at 7) ("Defendants may redact counsel's mental impressions, such as whether a design change infringes the `937 Patent."). But at the May 10, 2021 hearing, Plaintiff's counsel appeared to change course, stating that communications revealing the impressions of counsel on design modifications were not properly considered to be work product. With this background in mind, the Court considers the parties' arguments in turn.

### A. Defendants Did Not Waive Privilege

The documents at issue and produced *in camera* come from four separate privilege logs: (1) a Harvest Log dated 6/17/2020; (2) a Harvest Log produced on 7/13/2020; (3) a Harvest Log produced on 7/31/2020; and (4) an undated Prairie Land Log. (Doc. 276-2). Plaintiff states that "[w]hile seeking a wholesale waiver would be

5

appropriate under the circumstances, Sioux Steel only seeks to compel disclosure of communications and materials that genuinely do not relate to Mr. Meyer's expert testimony, rather than seeking disclosure of the numerous communications on the privilege logs at issue that are related to prior art patents or that relate to his invalidity opinion." (Doc. 281, at 15). Plaintiff has highlighted the specific entries on each privilege log it says must be produced. (Doc. 276-2).

Based on this Court's *in camera* review, most of the disputed documents that have been withheld as privileged involve email communications between Meyer and defense counsel.[3] Many include defense counsel's mental thoughts and impressions about proposed design modifications. Others include mental thoughts and advice from counsel on other issues in this litigation such as prior art, patent searches, patent applications, and litigation plans. As noted, Plaintiff argues that Defendants have waived any claim of privilege over these documents to the extent they fall outside the scope of Meyer's expert testimony. This argument relates back to the subpoenas Plaintiff issued to Harvest and Meyer on or about July 17, 2019. (Docs. 182-2, 182-3). Neither Harvest nor Defendants asserted timely objections to those subpoenas under Rule 45(d)(2)(B), and Plaintiff says that a privilege log served several months late was "skeletal" and "deficient," necessitating a motion to "have it corrected." (Doc. 281, at 16). According to Plaintiff, additional logs from Harvest were similarly inadequate, and "[r]oughly compliant logs . . . were not served until July 2020, a year after the Subpoenas were issued." (*Id*.; Doc. 296, at 10).

Defendants respond that they could not meet the 14-day window for objections because they "had not yet received [from Meyer and Harvest] or been able to fully review

---

[3] On some of the emails Chaon, Joe McKenna and/or another Prairie Land employee is also copied.

the massive amount of documents they ultimately produced to Plaintiff." (Doc. 289, at 13). As Defendants explain, they "could not raise privilege objections without knowing if the documents were privileged." (*Id.*). This argument is unpersuasive because Defendants failed to seek an extension of time to respond to the subpoenas, though there is evidence they told Harvest they would do so. (*See* Doc. 281-7, 7/22/2019 email from defense counsel to Meyer and Chaon stating "we will be requesting an extension to this deadline" to respond to Plaintiff's subpoenas).

Nevertheless, "finding a waiver of a privilege for procedural violations is a harsh sanction." *Young v. City of Chicago*, No. 13 C 5651, 2017 WL 25170, at *7 (N.D. Ill. Jan. 3, 2017) (internal quotations omitted). As such, it "may only be imposed where a party displays willfulness, bad faith, or fault." *Am. Nat'l Bank and Trust Co. of Chicago v. Equitable Life Assur. Soc'y of U.S.*, 406 F.3d 867, 877 (7th Cir. 2005). Here, Plaintiff's evidence of bad faith consists of the following: (1) Plaintiff's belief that defense counsel were representing Harvest and Meyer in connection with the subpoenas but falsely told this Court they were not to "explain away th[e] delay" in submitting a privilege log; and (2) Defendants' blurring of the lines regarding Meyer's roles in this case. (Doc. 281, at 16-17; Doc. 296, at 7).

On the first point, defense counsel have at all times maintained their position before this Court that they do not represent Harvest or Meyer. The Court has no reason to doubt this assertion. Though Meyer testified at his deposition that he believed defense counsel were representing him, there is no agreement or other evidence of an attorney-client relationship sufficient to justify imposing the harsh sanction of waiver. (Doc. 281-1, at 42-43, Meyer Dep., at 146-47). As for Meyer's role in the case, the Court agrees with

7

Plaintiff that Defendants have been deliberately opaque about the date and scope of Meyer's retention as an expert. As noted, though it has always been clear that Meyer is a testifying expert on the issue of invalidity, Defendants only asserted that Meyer has also been retained as a consulting expert in response to this motion. But Defendants never provided Plaintiff with a specific retention date or other proof of the scope of Meyer's expert representation, and Meyer testified at his deposition that he had not been retained for any purpose other than invalidity.[4] It was only at a hearing on March 9, 2021 that Defendants divulged for the first time (in response to questioning from the Court) that there was a retention agreement with Meyer in 2016, and they then produced it.

Regardless, it appears from review of the *in camera* documents, as well as the signed June 16, 2016 letter retaining Meyer as a consulting expert (not in relation to any specific issue), that Meyer has been working with defense counsel on litigation issues since the lawsuit was filed. On the facts presented, the Court finds insufficient evidence of willfulness or bad faith to support a blanket waiver. *Compare Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001) (finding waiver of attorney-client privilege where, among other things, the defendant "hand-picked the disputed documents from its collection and set them aside" without including them on a privilege log, and "misrepresented to Ritacca that the documents at issue were mere duplicates rather than attorney-client communications."). *See also Greyer v. Ill. Dep't of Corrections*, 933 F.3d

---

[4] (*See* Doc. 281-1, at 4, Meyer Dep., at 19) ("Q. Has Prairie Land or Mr. Van Camp's firm ever retained you as a consulting expert witness for this case on anything other than invalidity of the 937 patent? * * * A. I don't -- okay. I have not been retained for anything else. I'm not really sure if there -- what you mean by a consulting witness, but I have not been retained for anything else.").

8

871, 877 (7th Cir. 2019) ("[D]istrict courts have broad discretion in fashioning sanctions against litigants.").

### B. Defendants Must Produce the Withheld Design Modification Drawings But Not the Bulk of the Remaining Documents

During the May 10, 2021 hearing, the Court ordered Defendants to produce any design modification drawings that appear on the privilege logs. As noted, Defendants did not oppose this and believe Meyer's drawings already have been produced (albeit bearing different bates numbers).[5] One of those drawings is part of an Action Item Summary (found at 10948, 11063, and 49895.0001) that was for a meeting of Prairie Land employees that Meyer attended. With the exception of item number 8, which identifies a topic to be discussed with counsel in order to receive legal advice, these documents must be produced in redacted form.[6]

To the extent Plaintiff also seeks documents containing counsel's mental impressions and opinions about those drawings, or legal advice sought or received, as revealed through discussions about the drawings, the motion to compel is denied. Plaintiff cites no authority establishing that he is entitled to such discovery about design-arounds either as a matter of course or under the particular facts of this case. *Compare Illumina Inc.*, 2020 WL 7047708, at *3.

Not all of the withheld documents (most of which involve communications between Meyer and defense counsel) relate to the design-around. Several documents reflect

---

[5] To clarify that ruling, every unique entry identified on the log as a "drawing" must be produced, even if this results in production of multiple copies of the same drawings with different bates numbers. To avoid unnecessary time and expense, identical copies of design modification drawings that are part of privileged email communications need not be produced in redacted form if the drawings already have been produced.

[6] Again, to avoid unnecessary time and expense, identical copies of the Action Item Summary that are part of privileged email communications need not be produced.

advice being sought or given on legal issues related to the case. Others contain defense counsel's requests to Meyer to obtain or review information on particular issues in the case, and Meyer's responses. Based on the *in camera* review, most of the withheld documents reveal, either directly or indirectly, the mental impressions and opinions of counsel about litigation issues, or legal advice sought or given on issues in the case.

In light of this, the Court has no hesitation in ruling that the documents at issue on the privilege log (with certain exceptions noted later) are protected from discovery as either a privileged attorney-client communication or as opinion work product. "The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). As for work product, Rule 26(b)(3)(A) provides that a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, . . . or agent)." FED. R. CIV. P. 26(b)(3)(A). Material that constitutes ordinary or fact work product may be discovered only upon a showing of substantial need and an inability to obtain substantially equivalent information without undue hardship. *Id*. To obtain opinion work product, an even stronger showing must be made. *See Timmermann's Ranch and Saddle Shop, Inc. v. Pace*, No. 11 C 1509, 2016 WL 1181792, at *2 (N.D. Ill. Mar. 28, 2016) (quoting *Upjohn Co. v. U.S.*, 449 U.S. 383, 401-02 (1981)) (to compel disclosure of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," a "far stronger showing of necessity and unavailability by other means . . . would be necessary.").

Here, the Court is satisfied from its review of the *in camera* documents that Meyer was acting as a consultant in the litigation soon after the lawsuit was filed on February 12, 2016, even though he did not sign a formal letter retaining him as a consulting expert until June 21, 2016. Regardless of his title, Meyer clearly was acting as an agent of Prairie Land and its counsel in the defense of this litigation as the documents demonstrate that he worked closely with counsel on multiple issues. *See Vera Bradley Designs, Inc. v. Aixin Li*, No. 20 C 2550, 2021 WL 1088323, at *6 (N.D. Ill. Mar. 22, 2021) ("The work-product privilege protects documents prepared by an attorney or the attorney's agent to analyze and prepare the client's case."); *Heriot v. Byrne*, 257 F.R.D. 645, 665 (N.D. Ill. 2009) (explaining that the work product doctrine and the attorney-client privilege "appl[y] to third parties who are agents of either the lawyer or the client.").

Plaintiff suggested during the May 10, 2021 hearing that documents reflecting the mental impressions, opinions and advice of defense counsel should be produced in redacted form, allowing Plaintiff to at least learn Meyer's side of discussions with counsel. With few exceptions noted later, the Court finds from its review that disclosure in the manner proposed by Plaintiff would effectively reveal opinion work product, and in some instances would reveal specific attorney advice that was sought. Further, any factual information contained within the communications is inextricably intertwined with counsel's mental impressions and opinions on legal issues in the case, making redaction impracticable. While the documents are therefore properly withheld, this does not mean that factual information is automatically shielded from discovery simply because it was discussed with counsel. See *infra*, pp. 14-15.

### C. Communications that Do Not Involve an Attorney

At the May 10, 2021 hearing, Plaintiff noted that some of the withheld communications do not appear to involve an attorney at all. Of course, this does not necessarily mean they are not protected under the work product doctrine or attorney-client privilege. But the Court closely examined these particular documents. There are seven entries on the privilege logs (ones that are not design modification drawings that Defendants already have been ordered to produce) reflecting communications between Bruce Meyer and Chaon, McKenna, Stephen Meyer, Joe Locke, and/or Sarah Meyer but no attorney. Three concern prior art (49865, 51075, and 52776) and are clearly protected work product. A fourth entry consists of a string of emails relating to an advertisement Defendants planned to place in the JulyAugust 2016 Grain Journal (35832). The four emails on 35832 that are dated July 19 and 20, 2016, and the emails on 35832_0001 and 35832_0002, are not privileged and must be produced (though their relevance is unclear). However, the first email on 35832 dated July 21, 2016 reflects thoughts from defense counsel about the litigation and was properly withheld.

The fifth of the seven entries (35020) consists of two emails between McKenna and Bruce Meyer. The email from McKenna to Meyer does not contain any privileged information and must be produced. The email from Meyer to McKenna (and the copy of the same email found at 49973, which is the sixth entry) appears to reflect information requested by counsel for the litigation, and need not be produced. The last entry (49845) is protected work product, as it reflects a communication made in anticipation of litigation to assist with the lawsuit.

One additional entry (47099) contains communications with counsel (as identified on the log) but also communications lacking any attorney involvement. The email from McKenna to defense counsel dated November 18, 2016 at 8:25 a.m. (found at 47099_0001), and counsel's response dated November 18, 2016 at 1:17 p.m. (found at 47099) reflect attorney-client communications seeking legal advice so are privileged. The email forwarding those communications to Meyer on November 22, 2016 (found at 47099) is also privileged. The remaining emails found at 47099_0001-47099_0003 are between a Sioux Steel employee and a third-party and must be produced.

### D. Meyer Need Not Provide Additional Testimony at this Time

Plaintiff next argues that it should have an opportunity to re-depose Meyer concerning his involvement in the design modification process. In support, Plaintiff provided portions of Meyer's deposition testimony in which he followed defense counsel's instruction not to answer certain questions. According to Plaintiff, these deposition snippets demonstrate that defense counsel relied on Meyer's "alleged expert status and work product" to object to Meyer "offering testimony regarding entire topics (such as design modifications), on the basis that such subject matter may have been discussed with counsel at some unidentified time, and regardless of whether the question sought communications with Defendants' counsel or whether the topic related to the subject matter of Mr. Meyer's expert testimony." (Doc. 281, at 7-8). In addition, during the May 10, 2021 hearing, Plaintiff's counsel asserted that he was "categorically prohibited" from questioning Meyer regarding his involvement in design modifications.

Defendants disagree and also note that Plaintiff has already deposed both Duane Chaon, the person Defendants have identified as being most knowledgeable about

13

attempts to design around Plaintiff's patent, and Joe McKenna. (Doc. 289, at 8). Given this and the fact that Meyer's designs have been produced, they argue that no further deposition of Meyer is warranted. In addition, Defendants broadly argue that since Meyer was acting as a consulting expert, the design modification information at issue is protected from disclosure absent a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." (*Id*. at 7) (quoting FED. R. CIV. P. 26(b)(4)(D)(ii)).

Turning to the deposition snippets flagged by Plaintiff, the Court finds that some of the objections to questions posed to Meyer were well founded while others were not. Factual information is not insulated from discovery simply because it was discussed with counsel or even because the facts came from counsel:

> No contention can be made that the attorney-client privilege precludes disclosure of factual information. The privilege does not protect facts communicated to an attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 395–96, 101 S. Ct. 677, 685–86, 66 L.Ed.2d 584 (1981). Clients cannot refuse to disclose facts which their attorneys conveyed to them and which the attorneys obtained from independent sources. *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S. Ct. 385, 392, 91 L.Ed. 451 (1947); 8 J. Wigmore, Wigmore on Evidence § 2317 (McNaughton rev. 1961).

*Sedco Int'l, S. A. v. Cory*, 683 F.2d 1201, 1205 (8th Cir.), cert. denied, 459 U.S. 1017 (1982). For this reason, Meyer should have answered questions such as these: "Tell me what potential modifications to the hinge unit you had involvement in?"; "Did you ever consider any modifications to that bottom plate that we looked at earlier?" and "Has Harvest had any input or involvement with potential design modifications to the sweep, whether they were made or not?" (Doc. 281-1, at 17, 19, 26, Meyer Dep., at 66, 81, 88).

On the other hand, Plaintiff is not entitled to discover the mental impressions, opinions, and advice of Defendants' counsel, at least without a heightened showing of

14

need and an inability to get the information elsewhere. *Timmermann's Ranch and Saddle Shop, Inc.*, 2016 WL 1181792, at *2. As the court explained in *Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267 (D. Neb. 1989), in seeking factual information during a deposition, care must be taken to protect against indirect disclosure of opinion work product:

> There is simply nothing wrong with asking for facts from a deponent even though those facts may have been communicated to the deponent by the deponent's counsel. But, depending upon how questions are phrased to the witness, deposition questions may tend to elicit the impressions of counsel about the relative significance of the facts; opposing counsel is not entitled to his adversaries' thought processes. . . . Here the effort must be to protect against indirect disclosure of an attorney's mental impressions or theories of the case.

*Id.* at 280. At times, Plaintiff's questions to Meyer seemed designed to discover opinion work product rather than to avoid it. For example, Defendants properly objected to this question: "Were the modifications that you considered to the hinge unit counsel's idea?" (Doc. 281-1, at 27, Meyer Dep., at 89). Plaintiff has made an insufficient showing that it is entitled to directly or indirectly learn the ideas, mental impressions, opinions, and advice of Defendants' counsel about the design around through testimony of Meyer about his communications with counsel.

In this Court's view, the analysis under Rule 26(b)(4)(D)(ii)) leads to a similar result. To the extent Meyer–wearing his "consulting expert" hat–redesigned the bin paddle sweeps for Prairie Land instead of its own employees, he may well have factual information that is highly relevant and unavailable from other witnesses. Hence Plaintiff likely would be able to make the required showing of "exceptional circumstances" since it would be "impracticable…to obtain facts or opinions on the same subject by other means." FED. R. CIV. P. 26(b)(4)(D)(ii). In this Court's view, Defendants cannot shield

factual information about the design-around by having a consulting expert do the design rather than Prairie Land's own employees.[7]

At this juncture and on the record presented, the Court is not persuaded that Plaintiff requires additional testimony from Meyer on the topic of design modifications. Based on information provided during the recent hearing, and the documents that will be produced pursuant to this order, Plaintiff may conclude that Meyer's involvement on the redesign was so minimal that it would be wasteful to re-depose him as opposed to Chaon or McKenna. Indeed, Plaintiff alluded during the hearing to possibly seeking to re-depose Chaon or McKenna since certain documents were produced only after their depositions. As a result, it is premature to decide whether additional depositions of these individuals or Meyer are warranted. Therefore, the motion to compel additional deposition testimony from Meyer is denied without prejudice

Plaintiff should promptly review the new discovery that will be produced by June 2, 2021 pursuant to this order, and identify for Defendants (and confer about) any redesign discovery believed to still be missing. The parties shall attempt to reach agreement on any specific (and limited) additional deposition testimony or other discovery to occur on the redesign issue. They shall also exhaust efforts to resolve any remaining disputes over yet another (50 page) privilege log referenced during the May 10th hearing. By June 16, 2021, the parties are to file a joint status report identifying any agreements (or disagreements) about additional redesign discovery to be completed, and indicating whether disputes over the final privilege log have been resolved.

---

[7] During the May 10, 2021 hearing, Defendants stated that Prairie Land employees made the redesign drawings that ultimately were used, though Meyer admittedly prepared some early drawings that reportedly were not adopted.

### E. Additional Matters

The parties' additional arguments merit little discussion. In light of the Court's *in camera* review, Plaintiff's vagueness objections are overruled as moot. Defendants need not produce the following documents: 3893, 37332, 40039, 40039.0001, 40844, 47233, 47238, 49927, 49936, 50361, or 50363.

The dispute as to the document bates stamped 49847, which appears on Harvest's July 31, 2020 privilege log, has been resolved. Plaintiff had objected that the document could not be considered work product because it was dated February 25, 2015, nearly a year before Defendants first anticipated litigation in February 2016. (Doc. 281, at 12). Defendants responded that the document "was inadvertently labeled from February 25, 2015, when it was in fact from 2016." (Doc. 289, at 4). Based on Defendants' representation, Plaintiff has confirmed that "this document is no longer at issue." (Doc. 296, at 3 n.1).

The Court finds no support for Defendants' argument that the motion to compel should be denied outright because Plaintiff failed to identify the specific discovery requests at issue. (Doc. 289, at 2-3). Plaintiff is challenging Defendants' decision to withhold documents from production based on a claim of privilege. The documents in question were clearly responsive to Plaintiff's discovery requests and the subpoenas issued to Harvest and Meyer; otherwise, Defendants would not have included them on a privilege log. Defendants do not cite, and the Court is not aware of any authority requiring Plaintiff to connect documents described on the Prairie Land and Harvest privilege logs to specific discovery requests in such circumstances.

Finally, two of the disputed documents (49872 and 49872.0001) involve a communication between Meyer and an individual named Todd Kaeb, who appears to be the co-owner and President of Illinois Grain and Seed Equipment, Inc. The Court is satisfied based on its *in camera* review that the documents involve a prior art search that is protected by the work product doctrine. *Sioux Steel Co.*, 2020 WL 2900834, at *3 ("This Court agrees . . . that prior art searches conducted in anticipation of litigation constitute work product and are protected from disclosure.").

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Compel Documents and Testimony Improperly Withheld as Privileged [276] is granted in part and denied in part. The motion is granted in that Defendants must produce certain documents described in this opinion by June 2, 2021, but is denied in all other respects. The parties are to file a joint status report by June 16, 2021.

ENTER:

Dated: May 19, 2021

_____
SHEILA FINNEGAN
United States Magistrate Judge