**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Sioux Steel Company, | |
| Plaintiff, | |
| | Case No. 16-cv-2212 |
| v. | |
| | Judge Mary M. Rowland |
| Prairie Land Mill Wright Services and Duane Chaon, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

In this suit Plaintiff Sioux Steel alleged that Defendants Prairie Land Mill Wright Services and Prairie Land's owner, Duane Chaon, infringed a patent Sioux Steel owns related to a piece of farm equipment. This case proceeded to a jury trial in December 2022. The Court entered judgment on July 11, 2023. [636]. Before the Court are the parties' post-trial motions.

For the reasons stated below, Plaintiff's motion for permanent injunction [562] is granted; Plaintiff's motion for prejudgment and post-judgment interest and supplemental damages [571] is granted; Plaintiff's motion for enhanced damages [572] is denied; Plaintiff's motion for attorneys' fees [574] [597] is denied. Defendants' motion for judgment as a matter of law or in the alternative a new trial [593] is denied; Defendants' motion for remittitur or a new trial on damages in the alternative to their renewed motion for a judgment as a matter of law [595] is denied; Defendants'

motion to strike sealed document [609] is denied as moot. Plaintiff's motion for bill of costs [650] is granted.

Defendants' motion to stay execution of judgment pending disposition of post-trial motions and appeal [640, 641] is denied. If Defendants wish to stay enforcement of the judgment, they must post bond in the amount of the judgment by September 15, 2023.

Plaintiff's motion for writ of execution [653] is denied.

## BACKGROUND

The following is a summary relevant to the present motions; this opinion otherwise assumes familiarity with the background and technology in this case. Sioux Steel developed a piece of farm equipment—a modular storage bin sweep that uses interconnected paddles to sweep and empty grain bins. Its patent, entitled "Modular Storage Bin Sweep System," was issued by the U.S. Patent & Trademark Office on March 3, 2015 (U.S. Patent No. 8,967,937 ("the Patent" or "937 Patent")). In February 2016, Sioux Steel filed this case against Defendants alleging patent infringement. In response Defendants denied infringement and asserted various affirmative defenses. In September 2016, Prairie Land filed a petition for inter partes review (IPR) with the Patent Trial and Appeal Board (PTAB). On April 4, 2018, the PTAB issued a final written decision, holding that Prairie Land failed to prove any claim of the '937 Patent was invalid in view of the prior art of record in the IPR. Prairie Land appealed and the Federal Circuit affirmed the PTAB's judgment on June 15, 2020.

At trial, only Claim 1 of the '937 Patent (and the only independent claim of the patent) was at issue.[1] Trial began on December 12, 2022. After eight days, on December 21, 2022, the jury entered a verdict, finding in favor of Sioux Steel and against Defendants. (Dkts. 530, 532).[2] The jury awarded lost profits in the amount of $11,422,720 and a reasonable royalty at a rate of 17% on $2,063,382.40 in total sales. The parties' post-trial motions raise several issues. The Court begins with Sioux Steel's motion for permanent injunction.

## ANALYSIS

## I.    Plaintiff's motion for permanent injunction

Sioux Steel seeks a court order permanently enjoining Defendants from continuing to infringe the '937 Patent. Sioux Steel argues that Defendants' willful infringement continued throughout seven years of this litigation and continues today, even after a jury verdict in favor of Sioux Steel. For the reasons discussed herein, the Court grants Sioux Steel's motion for permanent injunction.

### a.  Standard

A patentee has the right to exclude others from infringing its patent. 35 U.S.C. § 154(a)(1). Rule 65(d) of the Federal Rules of Civil Procedure sets out the proper form

---

[1] Claim 1 of the Patent contains the following phrases relevant here: "a pivot unit configured to carry a portion of the succession of interconnected paddles" and "a pivot structure positioned between and connecting the sections to permit pivoting of a first section with respect to a second section and thereby to permit a degree of pivotability of the unit longitudinal axes of the adjacent units with respect to each other in the array of units of the sweep assembly" (*see* Dkt. 178).

[2] After the close of evidence both parties orally moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The Court submitted the case to the jury.

and scope of an injunction. In *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), the Supreme Court explained that a plaintiff seeking a permanent injunction must show that (1) it suffered irreparable injury; (2) remedies available at law, such as monetary damages, would not adequately remedy that injury; (3) a remedy in equity is warranted considering the balance of hardships between the parties; and (4) the public interest would not be disserved by a permanent injunction. *Id*. at 391.[3]

### b. Analysis

Beginning with the first factor, Sioux Steel argues that it is suffering irreparable harm because: Sioux Steel and Prairie Land are direct competitors in the market for paddle sweeps; the paddle sweep incorporating the '937 patent is an important product line to Sioux Steel; Sioux Steel has never licensed the '937 patent; and the evidence at trial showed that Defendants will continue their infringement. Sioux Steel further contends that it has proven a causal nexus between the infringement and the irreparable harm it is suffering, and that a reasonable royalty would not fully compensate it for the damage from Defendants' willful infringement.

Defendants are correct that irreparable harm is not presumed upon a finding of patent infringement. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). "[I]t does not follow," however, "that courts should entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude." *Id*. (And Sioux Steel does not ask for that presumption in any event).

---

[3] The Court is also bound by the jury's explicit findings of fact and findings necessarily implicit in the verdict. *Sunny Handicraft (H.K.) Ltd. v. Envision This!, LLC*, No. 14 C 1512, 2019 WL 4735459, at *2 (N.D. Ill. Sept. 27, 2019).

Defendants concede that Prairie Land and Sioux Steel are direct competitors. (*see* Dkt. 581 at 6-7; Dkt. 641 at 11). While this does not automatically favor an injunction, direct competition with the infringer can support a finding of irreparable harm. *See TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 793 (Fed. Cir. 2019). Although Defendants insist their conduct has a "small [] effect" on Sioux Steel's business, Defendants do not dispute that the paddle sweep incorporating the '937 patent is an important product line to Sioux Steel. *See i4i Ltd. Partnership v. Microsoft Corp.,* 598 F.3d 831, 862 (Fed. Cir. 2010) (significant that plaintiff's business relied heavily on products based on his patent).

At trial, Sioux Steel's damages expert Krista Holt explained that Sioux Steel has about a 77 percent market share of the paddle sweep market, but in the absence of Prairie Land's products Sioux Steel would have around 95 percent market share. (*See* Tr., Dkt. 506). Defendants argue that Sioux Steel's expert's exhibit "is not actual evidence of a loss of market share", but do not rely on any authority or otherwise develop this argument. [581 at 11]. Defendants say the existence of another paddle sweep manufacturer, Sukup, undermines Sioux Steel's irreparable harm argument. But Defendants do not dispute that Sukup does not practice the claims of the '937 patent (*see* Dkt. 581), and in any event that company has less than 5 percent market share (Tr., Dkt. 506, pg. 14777).[4] Holt's expert opinion and trial testimony showed that Sioux Steel was at a minimum "susceptible to lowered market share." *TEK Glob.*, 920 F.3d at 793. *See also Robert Bosch*, 659 F.3d at 1151 (district court's finding of no

---

[4] These page numbers refer to the ECF page number.

irreparable harm was error in case involving direct competitors and loss in market share and access to potential customers).

In addition to their argument that there are multiple competitors in the market for grain conveyance in a grain bin, Defendants contend that Sioux Steel sells its own product to another company, GSI, who directly competes in the market with Sioux Steel. Even if Defendants are correct that this is not solely a two-player market, that is not dispositive for this Court's analysis. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,* 702 F.3d 1351, 1363 (Fed. Cir. 2012) (evidence of "direct and substantial competition between the parties" weighed in favor of irreparable harm); *Robert Bosch*, 659 F.3d at 1151 ("While the existence of a two-player market may well serve as a substantial ground for *granting* an injunction…the converse is not automatically true"). Indeed, the Federal Circuit in *Robert Bosch* explained that the district court there erred in concluding "that the presence of additional competitors, without more, cuts against a finding of irreparable harm." *Id.*

Another factor supporting a finding of irreparable harm is the trial evidence showing Sioux Steel has never licensed the '937 patent. (Tr., Dkt. 498, pg. 14202). *See Presidio Components,* 702 F.3d at 1363 ("The district court correctly found [plaintiff's] unwillingness to license favored finding irreparable injury."); *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) (the evidence showed that plaintiff "had never licensed the infringed patents, and intentionally chose not to."). Defendants assert that Sioux Steel licenses its patent rights to GSI. (Dkt. 581 at 10-11). But they rely on trial testimony that Sioux Steel *sells paddle sweeps* to GSI

and allows GSI to re-sell its product, not that Sioux Steel *licenses* the '937 patent to GSI. (Tr., Dkt. 506). Even so, irreparable harm "may exist even if there is evidence that, for example, the patent owner is willing to license its patent." *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.,* 895 F.3d 1304, 1331 (Fed. Cir. 2018) (cleaned up).

Defendants also contend that Sioux Steel's sales of sweeps with pivot units have increased in the years that Prairie Land's paddle-sweep products have been on the market. But a showing of irreparable injury is not undermined "[s]imply because a patentee manages to maintain a profit in the face of infringing competition," or experiences an increase in market share. *Douglas Dynamics, LLC*, 717 F.3d at 1344.[5]

Next, the Court finds that there is a sufficient causal nexus between Defendants' infringement and Sioux Steel's irreparable harm. The purpose of this requirement "is to establish the link between the infringement and the harm, to ensure that there is 'some connection' between the harm alleged and the infringing acts." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 640 (Fed. Cir. 2015). Sioux Steel relies on multiple witnesses' testimony about the importance of the pivot unit. (Dkt. 582 at 7-8). Additionally, the testimony at trial showed that Prairie Land intentionally advertised the Bin Gator by referencing Sioux Steel's patented features. Mr. Chaon testified that the pivot unit is an important part of the sweep. (Tr. Dkt. 521, pg. 15376-77). He testified that when Prairie Land first started advertising its paddle sweeps, it

---

[5] The Court disagrees that Sioux Steel's decision not to request a preliminary injunction bars a finding of irreparable harm. *Mytee Prod., Inc. v. Harris Rsch., Inc.,* 439 F. App'x 882, 888 (Fed. Cir. 2011) ("we have never held that failure to seek a preliminary injunction must be considered as a factor weighing against a court's issuance of a permanent injunction.").

advertised the pivot unit and has always advertised the pivot unit in its marketing communications. (*Id.*).

In addition, Sioux Steel argues, the jury awarded it lost profits. To make this award, the jury had to find there was demand for the patented product. (*See* Jury Instr. (Dkt. 527) at 35-36). Indeed, causation of lost profits "is a classical jury question." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1578 (Fed. Cir. 1992). Though Sioux Steel's evidence is "not as strong as proof that customers buy the infringing products *only* because of these particular features," *Apple Inc.*, 809 F.3d at 642 (emphasis added), Sioux Steel established "'some connection' between the harm alleged and the infringing acts." *Id.* at 644.[6]

Next, Sioux Steel has satisfied its burden to show monetary damages would not adequately remedy its injury. In addition to the reasons discussed related to irreparable harm, Sioux Steel's argument is supported by evidence that Prairie Land's market share increased from 16.6% in 2016 to 20.3% in 2020. (Dkt. 563-1 at 9). Defendants respond that the evidence about its market share is not relevant (Dkt. 581), but the Court disagrees. *See Douglas Dynamics*, 717 F.3d at 1345 ("[t]his record evidence [of defendants' rise in market share] underscores the profitability of infringement and suggests that mere damages will not compensate for a competitor's increasing share of the market, a market which [plaintiff] competes in, and a market

---

[6] Other design features "set the Bin Gator products apart from the competition," according to Defendants [581 at 15]. However, requiring a plaintiff to show a patented feature is the only reason for consumer demand would be too high a standard: "Consumer preferences are too complex—and the principles of equity are too flexible—for that to be the correct standard." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013).

8

that [plaintiff] has in part created with its investment in patented technology."). And the jury's award of a reasonable royalty does not undermine a finding of irreparable harm and inadequate remedy at law. Indeed "infringement may cause a patentee irreparable harm not remediable by a reasonable royalty." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008). A patentee "may find a royalty to be the most appropriate remedy for past infringement [but] [t]hat does not mean [] that there do not exist the kinds of hard-to-measure harms, such as impaired goodwill and competitive position." *Texas Advanced*, 895 F.3d at 1331.

Turning to the balance of hardships between the parties, Sioux Steel argues that it suffers a greater hardship absent an injunction since its business depends so heavily on sales involving its patent. The trial evidence showed that 85-90% of Sioux Steel's paddle sweep sales are derived from the '937 patent and is central to Sioux Steel's Koyker division. (*See* Dkt. 563-1). On the other hand, only 25% of Prairie Land's sales are derived from the infringing product. *Id*. Prairie Land does not dispute these numbers but argues that the comparison to Prairie Land's *overall* business is misleading. But Prairie Land does not dispute that most of its revenues are derived from *other* sources (not the Bin Gator sweeps). The evidence supports that requiring Sioux Steel "to compete against its own patented invention, with the resultant harms described [], places a substantial hardship [on it]." *Robert Bosch*, 659 F.3d at 1156. Further, Prairie Land does not articulate any particular hardship it would suffer from being prevented from selling the infringing product. *See Horne v. Elec. Eel Mfg. Co., Inc.*, 987 F.3d 704, 727 (7th Cir. 2021) (in the "adversarial system

9

of adjudication," courts refrain from constructing "arguments for a party, especially in civil cases and especially when the party is represented by counsel"). In sum, this factor favors Sioux Steel.

As to the public interest factor, the Court finds the public interest would be served by a permanent injunction. The public interest is generally served by granting an injunction against infringers. *Apple Inc.*, 809 F.3d at 647 ("[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions."). In addition to the strong public interest in enforcing a patentee's right to exclude, Sioux Steel argues that it has the manufacturing and sales/marketing capacity to meet the market demand if Prairie Land is excluded from the market. Defendants assert that Sioux Steel does not provide evidence that it has this capacity. But Scott Rysdon, president and CEO of Sioux Steel, testified that Sioux Steel could be making at least 50 percent more sweeps than it is now. (Tr., Dkt. 498, pgs. 14194 – 14199).

Finally, Defendants contend that Sioux Steel's proposed injunction is overbroad. The Federal Circuit has held that "the only acts the injunction may prohibit are infringement of the patent by the adjudicated devices and infringement by devices not more than colorably different from the adjudicated devices." *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004). So "the injunction should explicitly proscribe only those specific acts." *Id*. Defendants argue the definition of "Enjoined Products" includes not just the subset of bin sweeps that were accused of

10

infringing the '937 patent, but the entire "product line known as the 'Bin Gator'". Specifically, the proposed injunction would restrain enjoined parties from:

> making, using, importing, selling, and/or offering to sell in the United States any modular storage bin paddle sweep product that constitutes or includes any reproduction, copy or colorable imitation of the sweep claimed in the '937 Patent, including but not necessarily limited to, the product line known as the "Bin Gator," which Prairie Land has made, used, and offered for sale as a "single arm," "twin arm," "arm and a half," and "linear model", and any product not colorably different from the foregoing (collectively, "Enjoined Products")

Sioux Steel does not view its proposed language as including Bin Gators that did not contain the pivot unit that was at issue during trial. The Court agrees with Defendants though that the language could be read as including the entire Bin Gator product line. The Court requires Sioux Steel to submit a revised proposed permanent injunction to the Court's proposed order box consistent with this Order by September 11, 2023. A permanent injunction will then issue pursuant to Rule 65(d)(1)(C).

In sum, the Court has considered the facts of this case in light of the *eBay* factors and determined that a permanent injunction in Sioux Steel's favor is warranted (with the modification described above).

## II. Motion for JMOL

Defendants move under Rule 50(b) for judgment as a matter of law of no direct infringement, no infringement under the doctrine of equivalents, no indirect infringement, and no willful infringement. Defendants argue that no reasonable jury could have found for Sioux Steel on the evidence presented to the jury. The Court denies Defendants' motion.

### a. Standard

Under Rule 50, judgment as a matter of law is proper only if "a reasonable jury would not have a legally sufficient evidentiary basis to find as the actual jury did." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 601 (7th Cir. 2019) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 50(a)).[7] "This is a high bar." *Id*. The court must "give the nonmovant the benefit of every inference while refraining from weighing . . . the credibility of the evidence and testimony." *Id*. Following a jury verdict, in ruling on a Rule 50 motion, a court reviews the entire record and "disregard[s] all evidence favorable to the movant that the jury is not required to believe." *Id*. It is appropriate to overturn a jury verdict only if "no rational jury could have found for the nonmovant." *Id*. "Infringement is a question of fact that we review for substantial evidence when tried to a jury." *Ironburg*, 64 F.4th at 1291.

Courts construe "the trial evidence strictly in favor of the party who prevailed before the jury." *Roberts v. Alexandria Transportation, Inc.*, 968 F.3d 794, 798 (7th Cir. 2020) (cleaned up). The Court's role is "to decide whether a highly charitable assessment of the evidence supports the jury's verdict or if, instead, the jury was irrational to reach its conclusion." *Bowers v. Dart*, 1 F.4th 513, 521 (7th Cir. 2021) (cleaned up).

### b. The Jury's Finding of Direct Infringement

Sioux Steel asserts that there was ample evidence at trial that Prairie Land's products were made or designed to support the weight of the paddles and that the

---

[7] The Federal Circuit reviews "decisions on motions for judgment as a matter of law, motions for a new trial, and evidentiary rulings under the law of the regional circuit." *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1291 (Fed. Cir. 2023).

infringing products contain the pivot structure limitation. Defendants contend that their accused products do not infringe claim 1 of the Patent because they lack: (1) a pivot or drive unit "configured to" carry a portion of the succession of interconnected paddles; and (2) a "pivot structure." Defendants largely re-argue issues from the earlier claim construction stage of this case, raise new arguments, or assert arguments that Defendants could have, and often did, raise with the jury at trial. However, whether Defendants' products met the claim limitations was a question of fact for the jury to decide. *See Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1339 (Fed. Cir. 2016). The question for this Court "is limited to whether substantial evidence supports the jury's verdict under the issued construction." *Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 465 (Fed. Cir. 2016).

Considering the record as a whole and giving Sioux Steel "the benefit of every inference" without weighing "the credibility of the evidence and testimony," *Ruiz-Cortez*, 931 F.3d at 601, the Court finds that a rational juror would have a legally sufficient basis to find that Defendants infringed claim 1 of the '937 Patent.[8]

Initially, the Court agrees with Sioux Steel that Defendants did not fully comply with Rule 50, permitting a party to renew its earlier Rule 50(a) motion but "only [on] the grounds it advanced in the pre-verdict 50(a) motion." *Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.*, 869 F.3d 598, 604 (7th Cir. 2017). For their part Defendants say the Court and Sioux Steel "had sufficient notice" of their position based on their

---

[8] Because the Court finds no reason to overturn the jury's verdict about direct infringement, it need not address Defendants' arguments about the doctrine of equivalents.

summary judgment briefs. [627 at 6-8]. That does not suffice, but the Court will nevertheless consider the merits of the parties' arguments.

First, Defendants argue that at trial Sioux Steel ignored the Court's claim construction of "configured to" and confused the jury. Defendants argue that Sioux Steel only elicited testimony *that* the return floor supports the weight of the paddles, not that it was "*made or designed to*" do so. According to Defendants, the evidence showed the "pivot unit" and "drive unit" of the accused products "were not specifically made or designed to carry a portion of the succession of interconnected paddles as required by the claims, but rather to contain grain that is not deposited at the sump." [594 at 23].

Defendants ask the Court to credit Defendants' expert's testimony and discredit Sioux Steel's. It is well-settled that *a jury* is "entitled to credit [one party's] experts over [the other's]." *Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1341 (Fed. Cir. 2010). *See also Ironburg Inventions*, 64 F.4th at 1293 ("Both parties presented expert testimony…and we see no reason why the jury was not entitled to credit [plaintiff's] evidence over [defendant's] evidence.") (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1224-25 (Fed. Cir. 2014)). It was the jury's role to weigh the evidence. *See Roberts*, 968 F.3d at 798. It is this Court's role to now give the benefit of every inference to Sioux Steel "while refraining from weighing . . . the credibility of the evidence and testimony." *Ruiz-Cortez*, 931 F.3d at 601.

Further, the Court construed the term "configured to" and instructed the jury accordingly. (Dkt. 480; Jury Instr. (Dkt. 527)). Notably, Defendants do not argue that

the Court erred in construing "configured to" (indeed, this Court adopted *Defendants'* construction of the term (Dkt. 480)) or in its instruction to the jury. The Court "accords substantial deference to a jury's factual application of a claim construction to the accused device in an infringement determination." *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1312 (Fed. Cir. 2003). *See also Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1320 (Fed. Cir. 2003) ("parties cannot reserve issues of claim construction for the stage of post-trial motions"); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 974 (Fed. Cir. 2018).[9]

Echoing their arguments about "configured to", Defendants argue that the evidence at trial showed that the accused products do not satisfy the "pivot structure" requirements of claim 1 of the Patent. They maintain that the "uncontroverted evidence at trial was that the movement in Prairie Land's ball-and-socket joints is not 'about' any pin or shaft as required by the claims, but rather is 'about' the spherical surface of the ball." [594 at 26]. They cite the testimony of Chaon, Meyer, and Decker in support. The jury was free to credit or discredit all this testimony. Again, the Court finds no reason to disturb the jury's verdict. Considering the applicable standard, the parties' arguments, and the trial evidence construed "strictly in favor of" Sioux Steel, *Roberts*, 968 F.3d at 798, the Court finds that substantial evidence supports the jury's direct infringement finding.

---

[9] Although Defendants insist that the jury was confused or mislead by Sioux Steel at trial (noting the "jury's failure to comprehend and/or follow the Court's instructions") the Court does not discern an argument that this Court erred in its instruction to the jury.

Finally, Defendants assert that they were "prevented from presenting a number of demonstrative exhibits that had a significant chance of educating the jury about the purpose of the return box in the accused products." [594 at 24]. Use of a demonstrative exhibit "is properly left to the sound discretion of the judge presiding over the trial." *Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 708 (7th Cir. 2013); *see also Jackson v. Willis*, 844 F.3d 696, 701 (7th Cir. 2016) ("The trial court enjoys broad discretion in determining whether to admit or exclude evidence."). The Court is not persuaded that its discretionary decision at trial about Defendants' demonstrative exhibits warrants judgment as a matter of law in their favor.

### c. Jury's Finding of Induced Infringement

The jury in this case found that Mr. Chaon was liable for inducing Prairie Land to infringe claim 1 of the Patent. Defendants argue this finding should be overturned. Induced infringement requires knowledge that the inducing conduct amounts to patent infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). To determine whether a defendant had that knowledge, "direct evidence is not required; rather, circumstantial evidence may suffice." *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1322 (Fed. Cir. 2009) (cleaned up).

The evidence at trial supports the jury's verdict. For example, Mr. Chaon testified that he knew about the '937 patent since at least 2015, it was his decision to continue to sell the sweep despite knowing about the '937 patent, and he designed the product Sioux Steel alleged was infringing. (Tr. Dkt. 521, pg. 15398). Defendants rely on Mr. Chaon's testimony that he believed he was "avoiding infringement." But as fact

16

finders, the jury was free to weigh and credit this testimony and to decide that it was more likely than not that Mr. Chaon induced Prairie Land to infringe Claim 1 of the Patent. The Court will not disturb the jury's verdict on induced infringement.

### d. Jury's Findings of Willful Infringement

Defendants also challenge the jury's finding that Defendants willfully infringed. Defendants' burden to challenge that finding "is a heavy one." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1190 (Fed. Cir. 1998). A willfulness determination is fact intensive. *See Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

Defendants insist that they engaged in "extensive design-around efforts" that undermine the jury's willfulness finding. As Sioux Steel points out, Mr. Chaon testified that he learned of the '937 Patent at least as early as 2015 but started the "design-around" in 2016 *after* the filing of this lawsuit. (Dkt. 619 at 32; Tr., Dkt. 521, pg. 15369-70). Again, the jury was permitted to consider this testimony and the other evidence at trial and conclude that Defendants willfully infringed the Patent. *See WBIP, LLC*, 829 F.3d at 1341 (noting "established law that the factual components of the willfulness question should be resolved by the jury."). Because the Court draws all reasonable inferences most favorable to the verdict, it finds the jury's willfulness verdict supported by substantial evidence.

In short, it is well-settled that "it takes a lot to set aside a jury verdict." *Valdivia v. Twp. High School Dist. 214*, 942 F.3d 395, 396 (7th Cir. 2019). The Court finds the

jury had a sufficient basis to find for Sioux Steel and there is no reason to set aside the jury's verdict in this case.

### III. Motion for a New Trial

In the alternative to its request for judgment as a matter of law, Defendants move for a new trial. This motion is denied. A new trial is appropriate under Rule 59(a) "if the trial was in some way unfair to the moving party." *Martinez v. City of Chicago*, 900 F.3d 838, 844 (7th Cir. 2018) (cleaned up). Such a motion seeks "dramatic relief." *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 758 (7th Cir. 1994). "A motion for a new trial can be granted when the district court—in its own assessment of the evidence presented—believes that the verdict went against [its] manifest weight." *Mejia v. Cook County*, 650 F.3d 631, 634 (7th Cir. 2011); *Plyler v. Whirlpool Corp.*, 751 F.3d 509 (7th Cir. 2014). This case does not meet the high standard warranting a new trial.

Defendants contend that the evidence at trial failed to show that the accused products infringe the claims of Plaintiff's patent, and affirmatively showed they did not infringe. Defendants' arguments for a new trial repeat their arguments for judgment as a matter of law. Even considering that the evidence at trial was sometimes in conflict, it "is an invasion of the jury's province to grant a new trial merely because the evidence was sharply in conflict." *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012) (cleaned up). Considering the trial evidence as a whole, the Court does not find that this is a case of "the record show[ing] that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Id.* (cleaned up).

18

## IV.    Defendants' Motion For Remittitur Or A New Trial On Damages

The Court turns to Defendants' motion for remittitur or a new trial on damages. They argue that the jury's verdict awarding damages to Sioux Steel was against the clear weight of the evidence and lacked a rational connection to the trial evidence.

Under 35 U.S.C. § 284, a patentee whose patent has been infringed is entitled to damages "adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with the interest and costs as fixed by the court." At trial Sioux Steel had to prove damages by a preponderance of the evidence. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996). As Defendants acknowledge, the decision whether to remit a damages award or grant a new trial on damages rests in the sound discretion of this Court. [596 at 4]. A court may vacate a jury's damages award only if it is "against the clear or great weight of the evidence." *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995). At the same time "any rate determined by the trier of fact must be supported by relevant evidence in the record." *Id.* A court defers to the jury's verdict, confining its inquiry to: "whether the award is monstrously excessive; whether there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas [;] and whether the award is roughly comparable to awards made in similar cases." *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 566 (7th Cir. 2006) (cleaned up).

Defendants argue that the jury's lost profits award is not supported by the trial evidence. Expert Ms. Holt testified that she calculated Sioux Steel's total lost profits to be $11,422,720. (Tr., Dkt. 506, pgs. 14818, 14823, 14860). That was the amount the jury awarded. For their part Defendants critique Sioux Steel's President's testimony and argue that its damages expert's opinion was not supported by rational evidence. Defendants had the opportunity to cross-examine these witnesses. The Court does not find a reason to substitute its judgment for that of the jury. The jury's lost profits award was not contrary to the manifest weight of the evidence.

Next is the reasonable royalty. As with lost profits, the Court will not second-guess the jury's reasonable royalty award. The jury could rely on Holt's expert testimony that the midpoint of a reasonable royalty range was 14%. (Tr., Dkt. 506, pgs. 14857-58). She then decided 13% to be on the "conservative side." *Id*. The jury also heard Holt specify more than once that she determined there was a range of potential reasonable royalty rates from 7.6 to 20.4 percent. *Id*. Although 17% is above Holt's conservative 13% estimate, the Court does not find that the 17% rate settled on by the jury to be against the manifest weight of the evidence. *See Unisplay, S.A.*, 69 F.3d at 519 ("[A] jury's [royalty] choice simply must be within the range encompassed by the record as a whole.").[10]

Defendants' motion for remittitur or a new trial on damages is denied.

---

[10] Defendants rely on *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731 (7th Cir. 2004), where the jury awarded a plaintiff an amount well above the contract damages it claimed. That case did not involve patent infringement or a royalty rate. And it does not help Defendants' position.

## V.    Plaintiff's motion for enhanced damages

Sioux Steel moves for treble damages under 35 U.S.C. § 284. The Patent Act gives district courts discretion to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Enhanced damages "are generally reserved for egregious cases of culpable behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 104 (2016). The type of conduct warranting enhanced damages "has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, or—indeed—characteristic of a pirate." *Id. See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017); *see also Halo*, 579 U.S. at 103, (explaining that there is "no precise rule or formula for awarding damages under § 284 ...."). In this assessment district courts "consider the particular circumstances of the case." *Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.*, 32 F.4th 1161, 1178 (Fed. Cir. 2022).

Sioux Steel asserts that the Court should impose enhanced damages for several reasons including because Defendants deliberately and willfully copied the patented paddle sweeps, there is no evidence that Defendants had a good faith belief that the '937 Patent was invalid or not infringed, they deliberately disregarded every alternative design, and Defendants engaged in obstructionist discovery tactics. The Court does not agree that this case involves egregious infringement behavior warranting a "'punitive' or 'vindictive' sanction." *Halo*, 579 U.S. at 103. The litigation misconduct Sioux Steel relies upon does not warrant an increased damages award. *See Sunoco Partners*, 32 F.4th at 1179. Even combined with other factors, such as

21

Defendants' aggressive advertising, the circumstances do not warrant a punitive sanction. The jury awarded Sioux Steel lost profits of $11,422,720 and an additional reasonable royalty at the rate of 17% on $2,063,382.40 of sales. That is a substantial amount. Punishment is not necessary.

Considering both parties' positions and the totality of the circumstances, the Court in its discretion declines to assess enhanced damages against Defendants.

## VI.    Plaintiff's motion for attorneys' fees

Sioux Steel seeks a declaration that this case is "exceptional" and an award of its reasonable attorneys' fees and costs. Under 35 U.S.C. § 285, the district court may award reasonable attorneys' fees to the prevailing party in "exceptional" cases. An "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). Exceptional cases are rare. *Id*. "District courts may determine whether a case is 'exceptional' in a case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*. Courts consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). Sioux Steel has the burden under this standard. *Id*. at 1758.

This Court, considering the totality of the circumstances, including the underlying facts of the case, the parties' litigation conduct, generally and at trial in particular, finds that this is not an exceptional case. Certainly, it was hard-fought at all stages and there were times both Defendants and their counsel could have shown better judgment. But Sioux Steel has not shown that Defendants litigated this case in an obviously unreasonable or vexatious manner or asserted any plainly frivolous defenses causing the case to be exceptional.

Sioux Steel's motion for a finding that this case is exceptional and awarding attorneys' fees is denied.

## VII. Plaintiff's motion prejudgment and post-judgment interest and supplemental damages

Sioux Steel argues it is entitled to prejudgment interest because Defendants have been found to have willfully violated federal law, it is entitled to post-judgment interest as a matter of right, and an award of supplemental damages for any infringing sale in between the last infringing sale of record from which the jury could assess damages, up to the time a permanent injunction is entered.

28 U.S.C. § 1961 allows for post-judgment interest. Defendants do "not dispute that Plaintiff would be entitled to post-judgment interest as a matter of federal law under 28 U.S.C. § 1961 in the event that Plaintiff is ultimately awarded damages in this case." [585 at 3]. Accordingly, the Court grants Sioux Steel's request and finds it entitled to post-judgment interest on its infringement claim, calculated consistent with 28 U.S.C. § 1961. Next, prejudgment interest should "ordinarily be awarded." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983). This is "consistent with

23

Congress' overriding purpose of affording patent owners complete compensation." *Id*. Although the rate for post-judgment interest is set by statute, the pre-judgment interest rate is left to the discretion of the court. *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 437 (7th Cir. 1989). Sioux Steel seeks compound interest; Defendants argue for simple prejudgment interest at the prime rate. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995) (the "determination whether to award simple or compound interest is a matter largely within the discretion of the district court."). The Court considers that the jury's 17% royalty rate award, although not error, as discussed, was above Sioux Steel's expert's suggested rate. The Court in its discretion will award simple prejudgment interest at the prime rate.

As to supplemental damages, "[d]istrict courts have discretion to award damages for periods of infringement not considered by the jury." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 38 (Fed. Cir. 2012). The jury awarded a reasonable royalty at the rate of 17% on $2,063,382.40 of sales. Defendants provided an affidavit from Defendant Duane Chaon, one of the owners of Prairie Land. (Dkt. 585-1). Mr. Chaon's declaration states that since the conclusion of trial, Prairie Land has primarily sold or offered for sale units that do not include return floor plates. *Id*. The Court agrees with Sioux Steel that references in Mr. Chaon's declaration, particularly in paragraphs 7 and 8, are vague and do not provide sufficient assurance that Defendants are not and will not sell infringing products. Accordingly, the same royalty rate found by the jury will apply to the post-verdict supplemental damages

award. In order to calculate supplemental damages, by September 18, 2023 Defendants shall produce financial data showing their sales from October 13, 2022, through the date of the jury's verdict. Sioux Steel shall calculate the simple prejudgment interest rate and the supplemental award and by September 29, 2023 shall file a status report to that effect.

Accordingly, Sioux Steel's requests for prejudgment and post-judgment interest and supplemental damages are granted as set forth in this section. In addition, Defendants have moved to strike Plaintiff's submission of "Exhibit A to DN 571." [607]. The Court did not need to rely on that document to reach its decision. Therefore, Defendants' motion to strike exhibit [609] is denied as moot.

## VIII. Defendants' Motion to Stay Execution of Judgment Pending Post-Trial Motions and Appeal

Defendants seek an order staying execution and enforcement of the judgment entered on July 11, 2023, pending the disposition of post-trial motions and Defendants' appeal. They also ask the Court allow Prairie Land to file "other security" in connection with a stay. Instead of bond, they propose the Court enter an order that Defendants' "identified assets of the Company and Mr. Chaon not be transferred, encumbered, or otherwise dissipated outside the ordinary course of business for Prairie Land, and outside the ordinary living expenses of Mr. Chaon." [641]. Sioux Steel responds that it should be permitted to begin executing on its judgment, and if not, Defendants must post sufficient security to protect Sioux Steel's judgment. Sioux

Steel contends that Defendants should post a bond and/or other security in the amount of the judgment, inclusive of interests and costs.[11]

Federal Rule of Civil Procedure 62 provides that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security," and the stay "takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." Fed. R. Civ. P. 62(b). Ordinarily, to get a stay of execution of judgment, the movant must post a supersedeas bond for the full amount of the judgment. Fed.R.Civ.P. 62(d); *BASF Corp. v. Old World Trading Co.*, 979 F.2d 615 (7th Cir.1992). "The philosophy underlying Rule 62[b] is that a plaintiff who has won in the trial court should not be put to the expense of defending his judgment on appeal unless the defendant takes reasonable steps to assure that the judgment will be paid if it is affirmed." *Lightfoot v. Walker*, 797 F.2d 505, 506–07 (7th Cir. 1986). A district court has discretion to authorize unsecured stays pending appeal. *See id.; see also Schmude v. Sheahan*, 2004 WL 1179418, at *3 (N.D.Ill. May 25, 2004) ("[A] request for a stay is a request for extraordinary relief, equitable in character, and the movant bears a heavy burden.") (citations omitted).

To determine whether Defendants are entitled to a stay the Court assesses: "(1) whether [Defendants have] made a strong showing that [they are] likely to succeed

---

[11] Defendants argue that the Court's "July 11, 2023, Judgment is not a final judgment and thus is neither executable nor appealable." [641 at 2]. On August 10, 2023, Defendants filed a Notice of Appeal to the United States Court of Appeals for the Federal Circuit and explained they submitted the Notice of Appeal "to protect its rights and out of an abundance of caution despite there being no final, executable, or appealable order in this case." [651].

on the merits; (2) whether [Defendants] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The Court finds these factors weigh against a stay in this case. Defendants are concerned about destruction of their business and assert that "Prairie Land simply cannot satisfy the Judgment at this time" and "Defendants do not have cash assets in the amount of $15M." [641]. *Id.* Sioux Steel counters that Defendants are not being forthcoming about their financial condition. It troubles the Court that Defendants have not submitted an affidavit or declaration attesting to their financial condition or the specific risk to their business.

The "simplest way" to ensure that Rule 62's guaranty that an appellee is not "put to the expense of defending his judgment on appeal unless the defendant takes reasonable steps to assure that the judgment will be paid if it is affirmed" is to require the posting of a supersedeas bond. *Walker*, 797 F.2d at 506–07. Given the jury verdict, the date of judgment on the verdict (July 11, 2023)[12] and the date of today's ruling, Defendants have benefitted from an effective temporary stay in execution and enforcement of the judgment.[13]

---

[12] The Court withheld entry of the judgment to allow defense counsel a longer briefing period because the verdict was entered near the holidays and counsel had extensive travel planned in the new year. *See* Fed. R. Civ. Pro. 50(d) (motion for new trial must be filed 28 days after entry of judgment).

[13] Sioux Steel has filed a second lawsuit against both defendants alleging fraudulent transfer under Illinois law and requesting an accounting based on post-verdict transfer of assets. *See Sioux Steel Co. v. Prairie Land Mill Wright Services et al.,* 23 CV 3988. The Court granted Sioux Steel's request in this case to partially restrain Defendants' assets pending ruling on the post-trial motions. [649].

In deciding whether to waive the posting of bond, the court looks to factors including: (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the movant's ability to the bond to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the movant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position. *See Dillon v. City of Chicago*, 866 F.2d 902, 904 (7th Cir. 1988).

Considering the totality of the circumstances, the Court will not grant a stay or allow Defendants to waive bond. If Defendants wish to stay enforcement of the judgment, they must post bond in the amount of the judgment by September 15, 2023.

## IX. Plaintiff's motion for writ of execution

Sioux Steel asks the Court to enter a Writ of Execution to enable enforcement of the previously entered July 11th judgment order. Sioux Steel seeks an order that it is "entitled to enforce and collect from third parties the judgment debt entered against Defendants on July 11, 2023." Under Rule 69(a), "[t]he procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located..." The Court agrees with Defendants that the procedure sought by Sioux Steel in this motion is not proper. *See In re Hurley*, 148 B.R. 298, 302 (Bankr. N.D. Ill. 1992), aff'd, 158 B.R. 115 (N.D. Ill.

28

1993) (in Illinois the writ of execution been abolished); 735 ILCS 5/2-1501 ("Writs Abolished").

Sioux Steel's motion is denied. If execution of the judgment is not stayed by Defendants' posting of a full bond, discussed *supra*, Sioux Steel may issue third party citations to discover assets.

## X.    Plaintiff's motion for costs

Sioux Steel seeks costs. Defendants did not file any objections. (*see* Dkt. 655). The Court finds the categories and amounts sought to be allowable and reasonable. Accordingly, the Clerk is directed to tax costs in favor of plaintiffs in the amount of $27,334.90. However, the Court will stay taxation of those costs if Defendants post bond.

## CONCLUSION

For these reasons, Plaintiff's motion for permanent injunction [562] is granted; Plaintiff's motion for prejudgment and post-judgment interest and supplemental damages [571] is granted; Plaintiff's motion for enhanced damages [572] is denied; Plaintiff's motion for attorneys' fees [574] [597] is denied; Defendants' motion for judgment as a matter of law or in the alternative a new trial [593] is denied; Defendants' motion for remittitur or a new trial on damages in the alternative to their renewed motion for a judgment as a matter of law [595] is denied; Defendants' motion to strike sealed document [609] is denied as moot; Plaintiff's motion for bill of costs [650] is granted. Defendants' motion to stay execution of judgment pending

29

disposition of post-trial motions and appeal [640, 641] is denied. Plaintiff's motion for writ of execution [653] is denied.

If Defendants wish to stay enforcement of the judgment, they must post bond in the amount of the judgment entered on today's date by September 15, 2023. In light of the ruling herein, this Court *sua sponte* extends its August 10, 2023 order [649], currently set to expire on September 8, 2023, to September 15, 2023. The Court also requires Sioux Steel to submit a revised proposed permanent injunction to the Court's proposed order box consistent with this Order by September 11, 2023. To calculate supplemental damages, by September 18, 2023 Defendants shall produce financial data showing their sales from October 13, 2022, through the date of the jury's verdict. Sioux Steel shall calculate the simple prejudgment interest rate and the supplemental award and by September 29, 2023 file a status report to that effect.

Final judgment shall enter in Sioux Steel Company's favor. Civil case terminated.

E N T E R:

Dated: September 7, 2023

MARY M. ROWLAND
United States District Judge